**WILLIAM SIMPSON, dba TROPICAL PRINCESS CHAR-
TERS,** Petitioner–Appellant, v. **DEPARTMENT OF LAND
AND NATURAL RESOURCES, STATE OF HAWAII,**
Respondent–Appellee

NO. 13756

(CIV. NO. 88–0540(3))

MAY 9, 1990

BURNS, C.J., HEEN, AND TANAKA, JJ.

OPINION OF THE COURT BY TANAKA, J.

Petitioner–appellant William Simpson (Simpson), doing business as Tropical Princess Charters, seeks a review of the circuit court's dismissal of his appeal from the decision of the Board of Land and Natural Resources (Board)[1] denying his application for

---

[1]The Board of Land and Natural Resources (Board) is the executive board heading the Department of Land and Natural Resources (DLNR) of the State of Hawaii. Hawaii Revised Statutes (HRS) § 171–3 (1985). The Board consists of six members, of whom one is selected chairman by the governor. HRS § 171–4 (1985).

commercial mooring off Kahana, Maui, and from the denial of his motion for reconsideration. We hold that the appeal was not from a "contested case" within the meaning of the "Rules of Practice and Procedure" (Rules) of respondent–appellee Department of Land and Natural Resources (DLNR) of the State of Hawaii (State). However, the minimum requirements of fairness required the DLNR to inform Simpson that under the Rules he had a right to request a "contested case hearing." Therefore, we reverse and remand to the circuit court with a direction to remand to the DLNR for a contested case hearing.

## I.

The area offshore of Kahana, Maui, is a conservation area under the jurisdiction of the DLNR.[2] Simpson is the owner of a vessel named "Tropical Princess," a 40–foot trimaran sailboat (vessel). Since May 1987, Simpson had been using an underwater mooring block, previously placed by some other party, located off Kahana to moor the vessel. In early 1988, Simpson learned that it was illegal to moor, rather than anchor, a vessel in areas other than established mooring areas under the jurisdiction of the State Department of Transportation.

On February 22, 1988, Simpson filed a "Conservation District Use Application" (Application) for an after–the–fact commercial boat mooring permit at Kahana with the DLNR. By a letter dated June 20, 1988, the DLNR notified Simpson that a public hearing on his Application would be held by the Board on July 7, 1988. Simpson was present and participated in the July 7 public hearing.

The Board's final decision on the Application was scheduled for its August 12, 1988 meeting in Hilo, Hawaii. At that meeting,

---

[2] HRS § 190–1 (1985) provides that "[a]ll marine waters of the State are hereby constituted a marine life conservation area" subject to administration by the DLNR.

the Board deferred its action on the Application until its September 9, 1988 meeting on Maui.

At the September 9 meeting, the Board denied Simpson's Application. By letter dated September 21, 1988, the DLNR notified Simpson of the Board's denial of his Application. The letter also advised Simpson that he was assessed "a fine of $500.00 pursuant to Chapter 183, Section 41(e), HRS, for the unauthorized use of the Conservation District[.]" Record at 9.

In the interim, on September 14, 1988, Simpson wrote a letter to the Governor of the State, stating that a competitor, Sea Sails, had been granted a mooring permit and fined only $100. Simpson complained of the "tremendous injustice" dealt to him by the DLNR and "those involved with the underhanded tactics used against [his] company." Item 49 of DLNR's Record. Responding for the Governor, the chairperson of the Board indicated in his September 22, 1988 letter to Simpson that "the courts are now the appropriate place to express your concern." *Id.*

On October 21, 1988, Simpson filed a notice of appeal in the circuit court. On December 12, 1988, the DLNR filed a motion to dismiss the appeal on the ground that the circuit court lacked subject matter jurisdiction. The DLNR reasoned that (1) Simpson had not requested a "contested case hearing," as required by § 13–1–29[3] of its Rules, (2) the Board therefore did not hold a

---

[3] Section 13–1–29 of the "Rules of Practice and Procedure" (Rules) provides in part as follows:

**Request for hearing.** (a) A hearing on a contested matter may be requested by the board on its own motion or upon written petition of any government agency or any interested person who then properly qualifies to be admitted as a party. An oral or written request for a contested case hearing must be made by the close of the public hearing (if one is required) or the board meeting at which the matter is scheduled for disposition (if no public hearing is required). In either situation, the person or agency requesting the contested case hearing must file (or mail and postmark) a written petition with the board not later than ten days after the close of the public hearing or

"contested case hearing"; and (3) consequently, there was no final decision from a "contested case" for judicial review before the circuit court. At the January 19, 1988 hearing, the court orally granted DLNR's motion.

On January 23, 1989, Simpson sent a letter to the Board requesting a "contested case hearing." By letter dated January 30, 1989, Simpson's request was denied on the ground that it was untimely.

On January 31, 1989, a written order granting DLNR's motion to dimiss was filed. On February 9, 1989, Simpson served and filed a motion for reconsideration pursuant to Hawaii Rules of Civil Procedure (HRCP) Rule 60. The circuit court denied the motion on February 28, 1989. Simpson filed his notice of appeal on March 29, 1989.

## II.

"[A]ppellate courts are under an obligation to insure that they have jurisdiction to hear and determine each case." *State v. Moniz,* 69 Haw. 370, 372, 742 P.2d 373, 375 (1987). We therefore, *sua sponte,* raise the issue of appellate jurisdiction in this case.

Hawaii Rules of Appellate Procedure (HRAP) Rule 4(a)(1) requires a notice of appeal to be filed "within 30 days after the date of entry of the judgment or order appealed from." HRAP Rule 4(a)(4) provides, however, that if certain timely post–judgment motions are filed, the time for appeal shall run from the entry of the order disposing of such motions.

Simpson's notice of appeal was filed on March 29, 1989, more than 30 days after the filing of the dismissal order entered on January 31, 1989. It is therefore untimely unless Simpson's February 9,

the board meeting, whichever is applicable. The time for making an oral or written request and submitting a written petition may be waived by the board.

1989 motion for reconsideration, which was denied on February 28, 1989, was a tolling motion under HRAP Rule 4(a)(4). Thus, the issue is whether Simpson's motion for reconsideration was a tolling motion. Our answer is yes.

Under HRAP Rule 4(a)(4), a HRCP Rule 59(e) motion to alter or amend a judgment is a tolling motion. We have held that a motion for reconsideration made under HRCP Rule 59 "is permissible under Rule 59(e) as a motion to alter or amend judgment." *K. M. Young & Assocs., Inc. v. Cieslik*, 4 Haw. App. 657, 666, 675 P.2d 793, 800 (1983). However, a motion under HRCP Rule 60 is not a tolling motion under HRAP Rule 4(a)(4).

In the case at bar, Simpson designated his motion as one for "reconsideration" of the circuit court's January 31, 1989 order granting DLNR's motion to dismiss. However, the motion was made pursuant to HRCP Rule 60, rather than HRCP Rule 59(e). The crucial question then is whether Simpson's motion may be treated as a motion under HRCP Rule 59(e), despite his reliance on HRCP Rule 60. Our answer is yes.

> In order to avoid confusion, and to prevent harsh results for unwary parties, the courts have generally held that, regardless of its label, any motion made within ten days of entry of judgment which seeks a substantive change in the judgment will be considered a Rule 59(e) motion which suspends the finality of the judgment and tolls the time to appeal.

6A J. Moore, J. Lucas & G. Grotheer, Jr., *Moore's Federal Practice* ¶ 59.12[1], at 59–265 (2d ed. 1989). In *Sierra On–Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415 (9th Cir. 1984), where a motion for reconsideration did not state the particular rule under which it was filed, the court held that if the motion is served within ten days of judgment and could have been brought under Rule 59(e), it tolls the time for appeal.

In *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37 (2d Cir. 1982), plaintiffs filed a timely motion for reconsideration of the district court's dismissal of their complaint pursuant to Rule 60(b). The court of appeals treated the motion as one based on Rule 59(e) stating:

> Notwithstanding a plaintiff's own reliance on Rule 60(b), where a post–judgment motion is timely filed and "calls into question the correctness of that judgment it should be treated as a motion under Rule 59(e), however it may be formally styled."

*Id.* at 41 (quoting *Dove v. CODESCO*, 569 F.2d 807, 809 (4th Cir. 1978)). In *Dove*, plaintiff styled his post–judgment motion as one "to set aside the order of dismissal" pursuant to Rule 60(b).

Here, Simpson's motion for reconsideration was served and filed within ten days from the entry of the order granting DLNR's motion to dismiss. The motion questioned the correctness of the order. Therefore, although the motion was made pursuant to HRCP Rule 60, it may be treated as a HRCP Rule 59(e) tolling motion.

Accordingly, we have appellate jurisdiction.

### III.

Both parties agree that HRS § 91–14(a) (1985) governs Simpson's right to judicial review of the Board's decision. HRS § 91–14(a) provides in part:

> (a) Any person aggrieved by a final decision and order in a contested case . . . is entitled to judicial review thereof under this chapter; but nothing in this section shall be deemed to prevent resort to other means of review, redress, relief, or trial de novo, including the right of trial by jury, provided by law.

HRS § 91–1(5) (1985) defines "contested case" as "a proceeding in which the legal rights, duties, or privileges of specific parties are required by law to be determined after an opportunity for agency hearing." In turn, "agency hearing" means "such hearing held by an agency immediately prior to a judicial review of a contested case as provided in section 91–14." HRS § 91–1(6) (1985).

In determining whether there was a "contested case" before an administrative agency, our supreme court has held that "a public hearing, conducted pursuant to public notice" is a "contested case." *In re Application of Hawaiian Elec. Co.*, 56 Haw. 260, 264, 535 P.2d 1102, 1105 (1975) (citing *East Diamond Head Ass'n v. Zoning Bd. of Appeals*, 52 Haw. 518, 479 P.2d 796 (1971)). Participation in such a public hearing by a person aggrieved is "sufficient to give rise to appeal rights." *Jordan v. Hamada*, 62 Haw. 444, 449, 616 P.2d 1368, 1372 (1980). *See also Mahuiki v. Planning Comm'n*, 65 Haw. 506, 515, 654 P.2d 874, 880 (1982). Also, where an agency hearing, in fact, determines the past and present rights and liabilities of the parties, an adjudicatory, rather than a rulemaking process is involved, resulting in a "contested case." *Shoreline Transp., Inc. v. Robert's Tours & Transp., Inc.*, 70 Haw. 585, 779 P.2d 868 (1989).

## A.

Simpson argues that he participated in a duly noticed July 7, 1988 public hearing [4] conducted by the Board. The Board made its decision on September 9, 1988, and notified him of that decision on September 21, 1988. Therefore, he asserts that this constituted a final decision in a contested case. Simpson further asserts that he

---

[4] HRS § 183–41(c)(1) requires the Board to hold a public hearing "in every case involving the proposed use of land in a conservation zone for commercial purposes[.]"

was aggrieved by the decision denying his application and was therefore entitled to a judicial review under HRS § 91–14(a).

The DLNR contends, on the other hand, that Subchapter 5 of its Rules,[5] relating to contested case proceedings, applies in this case. The subchapter provides for prehearing conferences and exchange of exhibits (§ 13–1–36); gives the Board discretion to designate a hearing officer or master to conduct hearings, provides for verbatim record of the evidence presented at hearings, and gives parties the right to cross–examine witnesses (§ 13–1–32); provides for rules relating to the admission or rejection of evidence (§ 13–1–35); and requires that the Board's decision and order be accompanied by separate findings of fact and conclusions of law (§ 13–1–40). Since Simpson failed to request a "contested case hearing" pursuant to § 13–1–29[6] of the Rules, the DLNR claims that there was, in fact, no contested case that Simpson could appeal from under HRS § 91–14(a). We agree.

The fact that distinguishes this case from the previously cited Hawaii cases is that here the DLNR had adopted the Rules establishing formal procedures for contested case proceedings. The Rules, which were properly promulgated under HRS Chapter 91, are part of the public record. Under these circumstances, it is not inconsistent with the earlier cases to require Simpson to follow the established procedures.

The basic purpose of Subchapter 5 of the Rules is to provide the Board an opportunity to establish an adequate formal record for judicial review of its decision and order. Since Simpson did not request a contested case hearing, the record of the proceedings before the Board is sparse and inadequate for judicial review. Transcripts of witnesses' testimony at the public hearing, exhibits,

---

[5] Subchapter 5 of the Rules was adopted by the Board on August 27, 1982, following duly noticed public hearings held on August 5, 1982.

[6] *See supra* note 3.

if any, presented at the hearing, and the Board's findings of fact and conclusions of law are lacking. In fact, it is difficult to determine from the record who, other than Simpson, testified at the July 7, 1988 public hearing. The Board's decision and order seem to be based entirely on a staff planner's summary of the proceedings and recommendations. Thus, we hold that the public hearing before the Board was not a "contested case hearing" in accordance with the DLNR's Rules. To hold otherwise would vitiate the right of agencies to make and enforce such rules.

### B.

Simpson contends that the DLNR's actions estopped it from seeking the dismissal of his appeal to the circuit court. We find nothing in the record supporting Simpson's claim of estoppel.

We initially note that "the doctrine of equitable estoppel is fully applicable against the government if it is necessary to invoke it to prevent manifest injustice." *Yamada v. Natural Disaster Claims Comm'n*, 54 Haw. 621, 629, 513 P.2d 1001, 1006, *reh'g denied*, 55 Haw. 126, 516 P.2d 336 (1973) (citations omitted). "One invoking equitable estoppel must show that he or she has detrimentally relied on the representation or conduct of the person sought to be estopped *and* that such reliance was reasonable." *Doherty v. Hartford Ins. Group*, 58 Haw. 570, 573, 574 P.2d 132, 134–35 (1978) (emphasis in original) (citations omitted).

Here, if Simpson had relied on the Board chairperson's September 22, 1988 letter that Simpson should address his concerns to the courts, the reliance caused Simpson no detriment. By September 22, 1988, Simpson no longer had a right to request a contested case hearing under § 13–1–29 of the Rules, because the deadline for such a request had passed. Moreover, the September 22, 1988 letter did not indicate that Simpson's recourse to the courts was on the basis of a final decision in a contested case

pursuant to HRS § 91–14(a). It is possible that Simpson had access to "other means of review, redress, relief, or trial de novo," as suggested in HRS § 91–14(a). However, these are alternatives to, and not part of, a judicial review of a contested case under HRS § 91–14(a).

## C.

Simpson appeared *pro se* in the proceedings before the Board. The record clearly indicates that Simpson was unaware of § 13–1–29 of the Rules, which placed the onus on him to request a "contested case hearing" within ten days after the close of the July 7, 1988 public hearing, if he intended to seek a judicial review of the Board's adverse decision. Consequently, as an uninformed and unwary applicant, Simpson was trapped with an administrative agency's adverse decision not subject to judicial review.

The supreme court recently stated:

> Before a right to relief is barred because of the failure to seek administrative full and fair hearing, the agency process ought to be of such nature as to impress fully upon the litigant the opportunity for recourse it supplies and the consequence of failure to seek such recourse.

*Hawaii Blind Vendors Ass'n v. Department of Human Servs.*, 71 Haw. 367, 374, 791 P.2d 1261, 1265 (1990).

Here, the DLNR or the Board should have informed Simpson of his right to request a "contested case hearing" and the time within which such request must be made. Simpson should also have been "fully impressed" of the consequence that he would not have recourse to judicial review of an adverse decision without a "contested case hearing."

Moreover, § 13–1–29 of the Rules provides that the Board may waive the time within which a request for a "contested case hearing" may be made. Thus, the Board also could have waived

the time requirement to permit Simpson to submit a belated request for a "contested case hearing."

The minimum requirements of fairness mandate that Simpson be accorded a "contested case hearing" in this case.

## IV.

Accordingly, we reverse the circuit court's dismissal of Simpson's appeal and remand the case with a direction to remand the matter to the DLNR for a contested case hearing.

*Albert S. Albrechtson* (*Richard L. Rost* with him on the briefs; Richard L. Rost, Attorney at Law, A Law Corporation, of counsel) for petitioner–appellant.

*Edwin P. Watson*, Deputy Attorney General (*Johnson H. Wong*, Deputy Attorney General, with him on the briefs), for respondent–appellee.