870 P.2d 1272

Leiff Koa BUSH and Martin D.L. Kahae, on behalf of themselves and others similarly situated, Appellants–Appellants,

v.

HAWAIIAN HOMES COMMISSION; Hoaliku Drake, in her official capacity as Chairperson of the Hawaiian Homes Commission; Andrew Apana, Nani Brandt, Dennis Kauahi, Edison Keomaka, Ann Nathaniel, Alvina Park, George Robertson, and Walter Smith, Jr., in their official capacities as members of the Hawaiian Homes Commission, Appellees–Appellees.

No. 16840.

Supreme Court of Hawai'i.

April 5, 1994.

As Amended May 3, 1994.

Paul F.N. Lucas (Alan T. Murakami, Carl C. Christensen and Arnold Lum, with him on the briefs; Native Hawaiian Legal Corp.), Honolulu, for appellants.

Steven S. Michaels (Girard D. Lau, George K.K. Kaeo, Jr., Clayton Lee Crowell, Kumu B. Vasconcellos, with him on the briefs), Deputy Attys. Gen., Honolulu, for appellees.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

NAKAYAMA, Justice.

Hoʻolehua, Molokaʻi residents Leiff Koa Bush and Martin D.L. Kahae (Appellants) appeal from a denial of their request for judicial review of the Hawaiian Homes Commission's (Commission) approval of third party agreements between non-Hawaiian farmers and native Hawaiian lessees pursuant to the Hawaiian Homes Commission Act. The dispositive question is whether the circuit court had jurisdiction to review an agency appeal brought under Hawaiʻi Revised Statutes (HRS), chapter 91, the Hawaiʻi Administrative Procedures Act (HAPA), pursuant to HRS § 91–14(a) (1985). Because a contested case hearing did not precede Appellants' appeal, we affirm the circuit court's order dismissing the appeal.

## I. BACKGROUND

The State of Hawaiʻi and the Congress of the United States enacted the Hawaiian Homes Commission Act (HHCA) to "enable native Hawaiians [1] to return to their lands in order to fully support self-sufficiency."

---

1. A "native Hawaiian" is any descendant of not less than one-half part of the blood of the races

HHCA, 1920; Act of July 9, 1921, c. 42, 42 Stat. 108 (codified as amended at 48 U.S.C. note prec. § 491 (1988) and Haw. Const. art. XII, § 1), *reprinted in* 1 Haw.Rev.Stat. 39 (1992 Supp.) (HHCA, 1920, § 101) (hereafter, the HHCA will be cited as reprinted in Haw. Rev.Stat.). The task of implementing this policy has been delegated, pursuant to the HHCA § 222 entitled "Administration," to the Department of Hawaiian Home Lands (DHHL), headed by the Commission. Section 222 of the HHCA provides that the DHHL "shall adopt rules and regulations and policies in accordance with chapter 91, Hawai'i Revised Statutes." 1 Haw.Rev.Stat. 39, 227 (1992 Supp.) (HHCA, 1920, § 222). Consequently, Title 10, entitled "Department of Hawaiian Home Lands," of the Hawai'i Administrative Rules (HAR) was promulgated to establish the parameters of the DHHL's and Commission's powers.

A principal purpose of the HHCA includes "[p]lacing native Hawaiians on the lands set aside under this Act in a prompt and efficient manner and assuring long-term tenancy to beneficiaries of this Act and their successors." 1 Haw.Rev.Stat. 39 (1992 Supp.) (HHCA, 1920, § 101). This purpose is effectuated, in part, by the leasing of state land, deemed "Hawaiian home lands," in plots not to exceed forty acres, to native Hawaiians for use as a home and to cultivate as a farm at the minimal price of one dollar per year for a period of ninety-nine years.

Appellants are native Hawaiians and beneficiaries of the HHCA in Ho'olehua on the island of Moloka'i. Appellant Bush currently holds a one acre houselot with a seven and one-half acre agriculture homestead lot upon which he cultivates crops. He is also farming his grandmother's thirty-five to forty acre Hawaiian homestead agriculture lot. Appellant Kahae leases a forty acre agricultural homestead lot upon which he cultivates crops and also raises goats.

From 1980–1992, Larry Jefts (Jefts) and other non-Hawaiian farmers entered into

third party agreements (TPAs) with a number of native Hawaiian lessees on Moloka'i whereby the non-Hawaiian third parties contracted to use the lessees' crop acres for farming or pastoral purposes. The native Hawaiian lessees in turn received compensation in the form of monthly payments ranging from $120.00 to $200.00. Jefts and other third party non-Hawaiian farmers thereby contracted for the use of a number of leaseholds, accumulating considerable acreage upon which to facilitate large scale agribusiness. By the time Appellants petitioned the Commission to protest these agreements, Jefts had amassed close to 495 acres, which included approximately thirteen different leaseholds.

On December 18, 1987, Appellant Kahae and his family appeared before the Commission to contest the validity of the TPAs as violative of the HHCA provision prohibiting transfer of the native Hawaiian lessees' interest in the land. The Commission determined that the TPAs, when properly executed, did not violate the provisions of the HHCA and would provide "economic benefits" to the Moloka'i homesteaders. The Commission then had the DHHL notify all lessees by letter dated December 3, 1992 that if they intended to enter into a TPA, they must obtain written approval from the Commission in accordance with HAR § 10–3–35, entitled "Contracts covering lease lands."

Twenty-one homestead lessees from Ho'olehua, Moloka'i responded to the above notification by submitting written requests to the Commission for approval of their TPAs. The Commission planned to consider these petitions at its next regularly scheduled monthly public meeting on April 28, 1992 in Honolulu.

Four days before this meeting, Appellants, in accordance with HAR § 10–5–31, petitioned for a "contested case hearing," as defined in HRS § 91–1 (1985). This petition involved requesting a formal hearing in

inhabiting the Hawaiian Islands previous to 1778. HHCA, 1920, Act of July 9, 1921, c. 42, 42 Stat. 108 (codified as amended at 48 U.S.C. note

prec. § 491 (1988) and Haw. Const. art. XII, § 1), *reprinted in* 1 Haw.Rev.Stat. 167 (1985) (HHCA, 1920, § 201).

which Appellants' legal rights, duties, or privileges would be determined in relation to the TPAs prior to the Commission taking final action on the TPAs. On April 28, 1992, Appellants' counsel appeared before the Commission to formally request a contested case hearing and to reiterate Appellants' position against the validation of the TPAs. The Commission voted to defer action on the TPAs until its next regularly scheduled meeting set for May 19, 1992 on Kauai so as to allow the DHHL time for further investigation of the issue and a chance to formulate a recommendation.

Thereafter, Appellants made a request to postpone the consideration of the TPAs because Appellants' attorney would not be able to attend the May 19, 1992 meeting. The Commission denied this request. At the May meeting, the Commission voted to approve the twenty-three TPAs submitted by homestead lessees (twenty-two from Moloka'i and one from the island of Hawai'i) and also denied Appellants' request for a contested case hearing. Appellants appealed both agency decisions to the circuit court under HAPA, pursuant to HRS § 91–14(a). Upon motion by the Commission, the circuit court dismissed the appeal based on a lack of subject matter jurisdiction. This timely appeal followed.

## II. *DISCUSSION*

 If a court lacks jurisdiction over the subject matter of a proceeding, any judgment rendered in that proceeding is invalid. Therefore, " '[s]uch a question is valid at any stage of the case, and though a lower court is found to have lacked jurisdiction, we have jurisdiction here on appeal, not of the merits, but for the purpose of correcting an error in jurisdiction.' " *Chun v. Employees' Retirement Sys.*, 73 Haw. 9, 14, 828 P.2d 260, 263,

*reconsideration denied,* 73 Haw. 625, 829 P.2d 859 (1992) (quoting *In re Application of Rice,* 68 Haw. 334, 713 P.2d 426 (1986)). This court, therefore, is obliged to insure that it has jurisdiction. *Simpson v. Department of Land & Natural Resources,* 8 Haw. App. 16, 20, 791 P.2d 1267, 1271 (1990).

HRS § 91–14(a) allows any person "aggrieved by a final decision and order in a contested case" to invoke judicial review pursuant to HAPA. HRS § 91–14(a) (1985). We therefore must determine whether there was a final decision and order in a contested case from which a direct appeal to circuit court can be taken.[2]

 HAPA was adopted to "provide a uniform administrative procedure for all state and county boards, commissions, departments or offices which would encompass the procedure of rule making and adjudication of contested cases." Hse. Stand.Comm.Rep. No. 8, in 1961 House Journal, at 653. Because the Commission's administrative powers are articulated through the rules and regulations of HAR "in accordance with HRS chapter 91[,]" (1 Haw.Rev. Stat. 39, 63 (1992 Supp.) (HHCA, 1920, § 222), the Commission is a state agency that must conform to the requirements of HAPA when acting in the adjudication of a contested case. *Ainoa v. Unemployment Compensation Appeals Division,* 62 Haw. 286, 614 P.2d 380 (1980); *Town v. Land Use Commission,* 55 Haw. 538, 524 P.2d 84 (1974).

Appellants claim a right to judicial review pursuant to HRS § 91–14(a). Thus, the pertinent inquiry at this point is whether Appellants were entitled to obtain judicial review of the Commission's determinations.

### A. *Standing to Invoke Judicial Review*

 In the instant case, Appellants' standing to invoke judicial review under the

---

2. In *Kona Old Hawaiian Trails Group v. Lyman,* 69 Haw. 81, 734 P.2d 161 (1987), *Mahuiki v. Planning Commission,* 65 Haw. 506, 654 P.2d 874 (1982), and *Chang v. Planning Commission,* 64 Haw. 431, 643 P.2d 55 (1982), this court reviewed the events involved in the agency decision-making process to determine whether the proceedings constituted "contested case" hearings. Accordingly, in the instant case, it is appropriate for us to review what transpired so that we may correctly characterize the proceedings as either a "contested case" or simply an agency meeting.

HAPA is contingent upon a showing that they are "person[s] aggrieved by a final decision and order in a contested case" conducted before an administrative agency.[3] HRS § 91-14(a) (1985). Appellants may well have been aggrieved by the Commission's decision to approve the TPAs, inasmuch as the approved TPAs may have enabled the formation of agribusinesses which in turn unduly burdened Appellants' farming practice. Thus, Appellants could claim they were "specially, personally and adversely affected" by the administrative decision. *Kona Old Hawaiian Trails*, 69 Haw. at 90, 734 P.2d at 167 (citing *In re Hawaiian Electric Co.*, 56 Haw. 260, 264, 535 P.2d 1102, 1105 (1975)).

■ However, it is not enough that a person has been aggrieved by agency action. He or she " 'must have participated in [a] contested case before [an] administrative agency[,]' to acquire standing to challenge the decision in court." *Id.* (citing *Jordan v. Hamada*, 64 Haw. 451, 458, 643 P.2d 73, 76 (1982)); *see Kaapu v. Aloha Tower Dev. Corp.*, 74 Haw. 365, 382–383, 846 P.2d 882, 889 (1993) (citing *City and County of Honolulu v. Public Utilities Comm'n*, 53 Haw. 431, 433, 495 P.2d 1180, 1182 (1972)). The record in this case does not reveal that Appellants satisfied this prerequisite of participation in a contested case in order to entitle them to judicial review pursuant to HRS § 91-14(a). Indeed, the jurisdictional prerequisite of a contested case hearing did not occur.

### B. Contested Case: "Required by Law" Prerequisite

■ A "contested case" is defined by HRS § 91-1(5) as "a proceeding in which the legal rights, duties, or privileges of specific parties are required by law to be determined after an opportunity for agency hearing." HRS § 91-1(5) (1985). An "agency hearing" is

defined, in turn, as "such hearing held by an agency immediately prior to a judicial review of a contested case as provided in section 91-14." HRS § 91-1(6) (1985). Thus, if an agency hearing is "required by law," it is a contested case for the purposes of judicial review. The pivotal determination, therefore, is what constitutes the "required by law" prerequisite?

### 1. Statutory or Rule-based Mandate

■ If the statute or rule governing the activity in question does not *mandate* a hearing prior to the administrative agency's decision-making, the actions of the administrative agency are not "required by law" and do not amount to "a final decision or order in a contested case" from which a direct appeal to circuit court is possible. *Kona Old Hawaiian Trails*, 69 Haw. at 90, 734 P.2d at 167; *see, e.g., State v. Alvey*, 67 Haw. 49, 54 n. 4, 678 P.2d 5, 8 n. 4 (1984); *Miller v. Department of Transp.*, 3 Haw.App. 91, 92–93, 641 P.2d 991, 992 (1982); *Lono v. Ariyoshi*, 63 Haw. 138, 146, 621 P.2d 976, 981 (1981); *Tai v. Chang*, 58 Haw. 386, 388, 570 P.2d 563, 564 (1977); *Abramson v. Board of Regents*, 56 Haw. 680, 695, 548 P.2d 253, 254 (1976).

■ In the case at bar, the HHCA contains no provision requiring the Commission to hold a hearing prior to decision-making as to TPAs. Thus, there is no statutory mandate entitling Appellants to a hearing.

Section 222 of the HHCA does provide that "[t]he department shall adopt rules and regulations and policies in accordance with the provisions of chapter 91, Hawai'i Revised Statutes." 1 Haw.Rev.Stat. 39, 227 (1992 Supp.) (HHCA, 1920, § 222). The HAR were thereby promulgated, setting forth the rules, regulations and policies of the DHHL and Commission in administering the HHCA.

---

3. HRS § 91-14(a) (1985) provides:
 Any person aggrieved by a final decision and order in a *contested case* or by a preliminary ruling of the nature that deferral of review pending entry of a subsequent final decision

would deprive appellant of adequate relief is entitled to judicial review thereof under this chapter[.]
(Emphasis added).

These rules, like the HHCA, do not require a hearing prior to the Commission's decision-making as to TPAs but do provide for contested case hearing requests in relation to the HHCA. Sections 10–5–31 and 10–5–32 of the HAR dictate the appropriate procedure to follow in petitioning for a contested case but at the same time accord the Commission wide discretion in deciding whether to grant the petition:

§ 10–5–31 *Contested case hearing requests.* (a) Any person or agency including the commission and the department may request a contested case hearing and shall have the right and full opportunity to assert a claim provided that the claim is based on a law or rule over which the commission has jurisdiction.

\* \* \* \* \* \*

(c) Upon receipt of the complaint, the department shall initiate an investigation of the matters contained in the complaint. The complaint shall be presented within a reasonable time to the commission, together with investigator's report and staff recommendation and on the basis thereof the *commission shall determine whether proceedings shall be initiated and the matter set for hearing.*

(d) It is the policy of the commission not to initiate proceedings where the matters complained of involve a private controversy redressable in the courts and where the public interest is not involved, or where it is clear on the face of the complaint that there has been no violation of the law or any rule of the commission.

§ 10–5–32 *Decision to hold hearing, scheduling.*

(a) The commission shall hold a contested case hearing *whenever it finds that:*

 (1) Such a hearing is required by Chapter 91, HRS;

 (2) There is reason to believe that a law or rule of the commission has been violated;

 (3) Such a hearing would be in the best interest of one or more of the beneficiaries of the act; and

 (4) A proceeding by the commission would be in the interest of the department.

HAR §§ 10–5–31 and 10–5–32 (emphasis added).

In both sections, the Commission is allocated the discretion to determine whether contested case proceedings should be initiated and an actual hearing held. In other words, pursuant to these rules, and consequently the HHCA, the allegedly aggrieved claimant has a *conditional* right to a contested case hearing, dependent upon the Commission's evaluation of the matter. Further, if the complaint involves a private controversy redressable in the courts and where the public interest is not involved, the Commission has a rule-based justification to deny the petition.

Although the procedures involved in requesting a contested case hearing, and the substance of a contested case hearing once it has been granted by the Commission, are outlined in the administrative rules, the absolute right to such a hearing is not provided by these same rules. The Commission is granted wide administrative discretion to determine the validity of a particular claim and is not *required* to hold a contested case hearing. Consequently, there is no regulatory mandate for a hearing prior to the Commission's decision on TPA petitions.

### 2. *Constitutional Mandate*

"[T]he phrase *required by law* embraces both constitutional as well as statutory law[.]" *Lono,* 63 Haw. at 146, 621 P.2d at 981 (emphasis added). Therefore, despite the absence of a statutory or regulatory mandate, "[t]he adjudicatory procedures of the Hawai'i Administrative Procedure Act apply to hearings which an agency is constitutionally required to provide." *Aguiar v. Hawaii Housing Authority,* 55 Haw. 478, 478, 522 P.2d 1255, 1256 (1974); *see Miller,* 3 Haw. App. at 93, 641 P.2d at 992; *see also Mortensen v. Employees Retirement System Trustees,* 52 Haw. 212, 473 P.2d 866 (1970).

■ As discussed above, because no statute or regulation requires a hearing on the consideration of TPAs, the hearings in which the Commission considered the homestead lessees' petitions to approve their TPAs would be required by law, and therefore constitute a contested case hearing for the purposes of appellate review, only if due process mandated such a hearing. *Miller*, 3 Haw.App. at 93, 641 P.2d at 992.

■ The claim to a due process right to a hearing requires that the particular interest which the claimant seeks to protect be "property" within the meaning of the due process clauses of the federal and state constitutions.[4] *Aguiar*, 55 Haw. at 495, 522 P.2d at 1266. A "property interest" is not limited to "the traditional 'right-privilege' distinction[,] ... [but also includes] a benefit which one is entitled to receive by statute[.]" *Id.* at 496, 522 P.2d at 1267 (citations omitted). " 'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.' " *Sandy Beach Defense Fund v. City Council*, 70 Haw. 361, 377, 773 P.2d 250, 260 (1989) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, 561 (1972)). In the instant case, the subject matter of the hearing was the twenty-three homestead lessees' petitions for approval of their TPAs, not Appellants' right to maintain their leaseholds. The dispositive issue, therefore, is whether the homestead lessees' interest in entering into TPAs, not Appellants' entitlement to maintain the agrarian lifestyle on their leaseholds, constitutes a "property" interest such that the incumbent hearing was a "contested case" pursuant to HRS § 91–14(a). *Aguiar*, 55 Haw. at 495, 522 P.2d at 1267.

■ The TPAs can only be characterized as "subleases," as referred to in § 208(5) of the HHCA,[5] "transfers of homestead leases," as defined in HAR § 10–3–36, or "[c]ontracts covering lease lands," pursuant to the HAR § 10–3–35. Regardless of which characterization the Commission utilized, the TPAs cannot be considered "property" interests because a sublease, transfer, or contract covering leased lands does not constitute a property interest pursuant to the relevant sections of the HHCA and the HAR. Thus, the right to sublease, transfer homestead leases, or enter into a contract covering the leases is not "substantial enough to require agency hearings prior to [the Commission's decision.]" *Aguiar*, 55 Haw. at 495, 522 P.2d at 1267. Accordingly, because the subject matter of the underlying hearing did not involve the homestead lessees' "property" interests, the hearing that transpired was not "required by law" and therefore was not a contested case as defined by HRS 91–1(5) (1985).[6]

■ Without a statutory, rule-based, or constitutional mandate for a hearing, the hearing that took place was not "required by law" and therefore did not constitute a "contested case" for the purposes of obtaining appellate review pursuant to HRS § 91–14(a). Consequently, judicial review by the circuit court of the Commission's denial of Appellants' request for a contested case hearing as well as review of the Commission's approval of the TPAs is unattainable due to a lack of subject matter jurisdiction.

### C. *HRS § 91–14(a) Does Not Bar Other Means of Redress Provided by Law*

■ To disallow an appeal under HRS § 91–14(a) with no alternative would seem

---

4. The fourteenth amendment to the United States constitution provides in part, "nor shall any State deprive any person of life, liberty, or property, without due process of law." Article I, section 4 of the Hawai'i Constitution similarly states, in part, "[n]o person shall be deprived of life, liberty or property without due process of law."

5. 1 Haw.Rev.Stat. 167, 183–184 (1985) (HHCA, 1920, § 208(5)).

6. Once again, a "contested case" pursuant to HRS 91–1(5) (1985) "means a proceeding in which the legal rights, duties, or privileges of specific parties are required by law to be determined after an opportunity for agency hearing."

unjust inasmuch as the Commission would therefore hold what appears to be unfettered discretion to grant or deny a contested case hearing, thereby controlling appellate review. An alternative, however, is available. "[N]othing in this section [91–14] shall be deemed to prevent resort to other means of review, redress, relief, or trial de novo, including the right of trial by jury, *provided by law.*" HRS § 91–14(a) (1985) (emphasis added). Essentially, Appellants are not barred from contesting the Commission's actions through alternative means, but they are prohibited from accessing review of these actions through inappropriate means, in this case a direct appeal to circuit court.

In summary, if a contested case hearing has not been held, judicial review in the circuit court cannot be obtained because the court does not have jurisdiction pursuant to HRS § 91–14(a). If the agency has held a hearing on a matter pending before it, that proceeding cannot constitute a contested case hearing for purposes of determining a person's right to appellate review unless the hearing was "required by law," *i.e.,* specifically mandated by statute, rule, or the due process guarantees of the state and federal constitutions.

## III. CONCLUSION

Because neither the HHCA and the HAR, nor the requirement of due process mandate a hearing prior to the Commission's consideration of the homestead lessees' interest in entering into TPAs, the meetings that transpired did not constitute "contested case" hearings. Consequently, this court is without subject matter jurisdiction to review either the Commission's denial of Appellants' contested case hearing request as well as its approval of the TPAs because the jurisdictional prerequisite to appellate judicial review pursuant to HRS § 91–14(a), a contested case hearing, did not occur.

Therefore, we affirm the circuit court's dismissal of the Appellants HRS § 91–14(a) appeal based on a lack of subject matter jurisdiction.