881 P.2d 1210

PELE DEFENSE FUND, a Hawai'i non-profit corporation; Kapoho Community Association, a Hawai'i non-profit corporation; Robert Petricci; Jennifer Perry; Steve Phillips; and Aurora Martino-vitch, Appellants–Appellees,

v.

PUNA GEOTHERMAL VENTURE, a Hawai'i general partnership; John C. Lewin, M.D., in his capacity as Director of Health; State of Hawai'i, Department of Health, Appellees–Appellants.

No. 16098.

Supreme Court of Hawai'i.

Sept. 23, 1994.

See also 828 P.2d 802, 827 P.2d 1149.

Margery Sue Bronster (Gerald A. Sumida, Gilbert S. Coloma–Agaran, Duane R. Fisher of Carlsmith, Ball, Wichman, Murray, Case, Mukai & Ichiki, with her on the briefs), Honolulu, for appellee-appellant Puna Geothermal Venture.

Anthony L. Ranken, Wailuku, Maui, for appellants-appellees.

Before MOON, C.J., KLEIN, NAKAYAMA and RAMIL, JJ., and WALTER M. HEEN, Intermediate Court of Appeals Judge, In Place of LEVINSON, J., Recused.

KLEIN, Justice.

Puna Geothermal Venture (PGV) appeals the third circuit court's order denying PGV's motion to dismiss for lack of subject matter jurisdiction in an agency appeal brought by Pele Defense Fund (PDF) and other named parties [1] (collectively "Appellees"). PDF's appeal of the Department of Health's (DOH) decision to grant PGV's requested permits

1. In addition to the Kapoho Community Association, the following individuals are also named Appellants/Appellees in this case: Robert Petricci, Jennifer Perry, Steve Phillips, and Aurora Martinovitch.

was brought pursuant to Hawai'i Revised Statutes (HRS) § 91–14(a) (1985),[2] HRS § 603–21.8 (1985),[3] and Hawai'i Rules of Civil Procedure (HRCP) 72.[4]

## I. *Facts*

PGV applied to the DOH for two Authority to Construct permits pursuant to HRS chapter 342 (1985).[5] Respectively, the permits were for (1) a well field containing fourteen geothermal exploratory and developmental wells, and (2) a power plant. By statute and agency rule, the DOH has *discretionary* authority to hold public hearings on such applications. *See* HRS § 342–6(c); Hawai'i Administrative Rules (HAR) § 11–60–45(a).[6] At two "public informational hearings" held by the DOH, various individuals testified after requesting contested case hearings. The DOH referred these requests to the Attorney General's (AG's) office, and later informed the individuals that the AG's office had determined that there was no legal mandate to grant a contested case hearing. The DOH accordingly denied the contested case hearing requests and later granted PGV's permit application.

**2.** HRS § 91–14(a) provides:

Any person aggrieved by a final decision and order in a contested case or by a preliminary ruling of the nature that deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief is entitled to judicial review thereof under this chapter; but nothing in this section shall be deemed to prevent resort to other means of review, redress, relief, or trial de novo, including the right of trial by jury, provided by law.

**3.** HRS § 603–21.8 provides that "[t]he several circuit courts shall have jurisdiction of all causes that may properly come before them on any appeal allowed by law from any other court or agency."

**4.** HRCP 72 provides that "[w]here a right of redetermination or review in a circuit court is allowed by statute, any person adversely affected by the decision, order or action of a governmental official or body other than a court, may appeal from such decision, order or action by filing a notice of appeal in the circuit court having jurisdiction of the matter."

**5.** HRS chapter 342, Environmental Quality (enacted in 1972), was repealed in 1989. *See* Act 212, § 8, 1989 Haw.Sess.Laws 438, 509. Its replacement, HRS chapter 342B, Air Pollution,

Appellees sought judicial review of the DOH decision in the third circuit court pursuant to HRS § 91–14, HRS § 603–21.8 and HRCP Rule 72. PGV moved to dismiss the appeal arguing that the circuit court lacked subject matter jurisdiction. The circuit court denied the motion, and PGV moved for reconsideration. In a hearing on various motions, the circuit court gave the following reasons for its denial of PGV's motion:

[I]f this was a regular agency appeal ... the Court would basically agree with the PGV's position in terms of a contested case[,] ... [b]ut the Court was greatly influenced by ... the [*Mahuiki*] case and another case where there was a directive by the [appellate] courts that in environmental issues, that the technical requirements should not bar an appeal.

And I appreciate that there is no Hawai'i case that says that where an environmental issues where there are no mandated public hearings, that you can still have a contested case. I appreciate all the contested cases that have been cited ... [a]ll have a statutory requirement for public hearing.

was also repealed and replaced in 1992 with HRS chapter 342B, Air Pollution Control (Supp. 1992). *See* Act 240, § 2, 1992 Haw.Sess.Laws 618, 638.

**6.** HRS § 342–6(c) provided, in pertinent part, that "[t]he director *may* hold a public hearing before ruling on an application for a permit to control waste or hazardous waste pollution *if the director determines such public hearing to be in the public interest.*" (Emphasis added.)

HAR § 11–60–45(a) provides:
Except as provided in subsection (b), in considering any application for authority to construct or permit to operate, the director, at the director's sole discretion or upon the timely written request of any person, *may* allow for notice and opportunity for public comment in accordance with the this section, *if the director is of the opinion that public comment would aid in the director's decision.*
(Emphasis added.) HRS § 11–60–45(b) provides:
The director shall provide for notice and opportunity for public comment for any application for authority to construct a major stationary source or major modification subject to the prevention of significant deterioration review requirements of subchapter 4 in accordance with this section.

But the Court was influenced by the admonition that in environmental issues that the technical requirements should not be a bar.

The circuit court then denied PGV's motion for reconsideration, granted Appellees' motion to stay the granted permits, and granted PGV's motion for an interlocutory appeal regarding the jurisdictional issue. PGV timely filed a notice of appeal to this court.

## II. *Discussion*

### A. *Source of Appellate Jurisdiction*

The circuit court was correct in identifying our concern about the barriers facing litigants in matters affecting the environment. Accordingly, in *Pele Defense Fund v. Paty*, 73 Haw. 578, 592, 837 P.2d 1247, 1257 (1992) and *Mahuiki v. Planning Comm'n*, 65 Haw. 506, 654 P.2d 874 (1982) we approved less restrictive standing requirements to enable courts as well as agencies to hear cases and determine issues based upon the merits. "Where the interests at stake are in the realm of environmental concerns 'we have not been inclined to foreclose challenges to administrative determinations through restrictive applications of *standing* requirements.' " *Mahuiki*, 65 Haw. at 512, 654 P.2d at 878 (emphasis added) (citing *Life of the Land v. Land Use Comm'n*, 63 Haw. 166, 171, 623 P.2d 431, 438 (1981)).

■ However broadly we may view a litigant's standing to pursue a legal issue in court or before an agency, every court must nevertheless determine as a threshold matter whether it has jurisdiction to decide the issue presented. *Bush v. Hawaiian Homes Comm'n*, 76 Hawai'i 128, 133, 870 P.2d 1272, 1277 (Sup.1994) (observing that a judgment rendered without jurisdiction is invalid). "Standing is concerned with whether the parties have the right to bring suit. Subject matter jurisdiction is concerned with whether the court has the power to hear a case." *Maryland Waste Coalition v. Maryland Dep't of Educ.*, 84 Md.App. 544, 581 A.2d 60,

61 (1990). Thus, we must examine the statutes and rules cited by Appellees, as well as constitutional due process considerations, in order to determine whether the circuit court had jurisdiction to entertain their appeal. *See Bush*, 76 Haw. at 134–36, 870 P.2d at 1278–80.

### B. *Statutory Provisions*

#### 1. *HRS § 342–13*

■ On appeal, PDF argues that HRS § 342–13 (1985) provides the circuit court with appellate jurisdiction. This section sets forth the following:

> If any party is aggrieved by the decision of the director, the party *may appeal in the manner provided in chapter 91* to the circuit court of the circuit in which the party resides or has the party's principal place of business or in which the action in question occurred; provided that the operation of a cease and desist order will not be stayed on appeal unless specifically ordered by a court of competent jurisdiction.

HRS § 342–13 (emphasis added).

HRS § 342–13 must be read together with HRS chapter 91, which provides for appeals only from contested cases. *See infra* subsection II.B.2. Contrary to Appellees' assertions, therefore, HRS § 342–13 itself does not provide a basis for obtaining judicial review.

#### 2. *HRS § 91–14*

■ HRS § 91–14(a) provides the means by which judicial review of administrative contested cases can be obtained. Among its prerequisites, the section requires that a contested case must have occurred before appellate jurisdiction may be exercised. *Bush*, 76 Hawai'i at 133, 870 P.2d at 1277. A contested case is an agency hearing that 1) is required by law and 2) determines the rights, duties, or privileges of specific parties. *See* HRS § 91–1(5) (1985).[7] Appellants seeking judicial review under HRS § 91–14 must also

---

7. HRS § 91–1(5) provides that " '[c]ontested case' means a proceeding in which the legal rights, duties, or privileges of specific parties are required by law to be determined after an opportunity for agency hearing." In a classic example

of circular definition, HRS § 91–1(6) defines "agency hearing" as a "hearing held by an agency immediately prior to a judicial review of a contested case as provided in section 91–14." *See supra* note 2 (quoting HRS § 91–14(a)).

follow agency rules "relating to contested case proceedings ... properly promulgated under HRS Chapter 91[.]" *Simpson v. Department of Land & Natural Resources,* 8 Haw.App. 16, 24, 791 P.2d 1267, 1273 (1990).

### a. *Hearing required by law*

■ According to HRS § 91–1(5), a discretionary hearing cannot be a "contested case" because it fails to meet the "required by law" test. *See Bush,* 76 Haw. at 134–35, 870 P.2d at 1278–79. The parties do not dispute that public hearings held by the DOH were not required by statute or agency rule.[8] Consequently, the remaining question is whether the hearings were required by constitutional due process. *See id.* at 135–36, 870 P.2d at 1279–80.

■ ·Constitutional due process protections mandate a hearing whenever the claimant seeks to protect a "property interest," in other words, a benefit to which the claimant is legitimately entitled. *Id.* at 136, 870 P.2d at 1280 (citing *Aguiar v. Hawai'i Housing Authority,* 55 Haw. 478, 495, 522 P.2d 1255, 1267 (1974), and *Sandy Beach Defense Fund v. City Council,* 70 Haw. 361, 377, 773 P.2d 250, 260 (1989)).[9] The dispositive issue, therefore, is whether [PGV's] interest in [obtaining an ATC permit] ... constitutes a 'property' interest such that the agency hearing was a 'contested case' pursuant to HRS § 91–14(a)." *Bush,* 76 Hawai'i at 136, 870 P.2d at 1280.

■ PGV itself asserts that "a [contested case] is required when property interests, such as PGV's use of its project site, are implicated." PGV is correct with respect to the agency's *denial* of a proposed property use. *See supra* note 8 (quoting HRS § 342–6(c)). Furthermore, as a matter of constitutional due process, an agency hearing is also required where the *issuance* of a permit implicating an applicant's property rights adversely affects the constitutionally protected rights of other interested persons who have followed the agency's rules governing participation in contested cases. *See infra* sections II.B.2.b. and c.; *cf. Bush,* 76 Hawai'i at 136, 870 P.2d at 1280 (holding that the court does not have jurisdiction to hear the claims of persons aggrieved by a final agency decision involving third party agreements because the subject matter of the hearing did not concern "property interests" under the Hawaiian Homes Commission Act and the HAR).

The public hearings held by the DOH were proceedings in which PGV "sought to have the legal rights, duties or privileges of land in which it held an interest declared over the objections of other landowners and residents of" Puna. *Mahuiki v. Planning Comm'n,* 65 Haw. 506, 513, 654 P.2d 874, 879 (1982) (concluding that this characteristic is an "obvious" element of a contested case hearing); *see also Town v. Land Use Comm'n,* 55 Haw. 538, 548, 524 P.2d 84, 91 (1974) (holding that adjacent property owner has a property interest in the amendment of a district boundary). Thus, the DOH hearings were "contested case[s]" because they were "proceeding[s] in which the legal rights, duties or privileges of specific parties were required by law to be determined after an opportunity for agency hearing." HRS § 91–1(5).

### b. *Agency rules followed*

■ In *Simpson,* the Intermediate Court of Appeals (ICA) held that a public

---

**8.** *See supra* note 6. HRS § 342–6(c) also indicates, however, that "[t]he director *shall not deny* an application for the issuance ... of a permit *without affording the applicant a hearing* in accordance with chapter 91." (Emphasis added.) Nonetheless, we need not rely on the statute because a hearing is mandated by constitutional due process. *See infra* this subsection.

In the context of a claim brought under statutes currently in force, our inquiry into constitutional due process would appear to be unnecessary. *See* HRS § 342B–30 (allowing both "[t]he applicant and any person who participated in the public comment process" to obtain judicial review). However, this provision does ·not preclude other forms of judicial review, for example, under HRS § 91–14(a).

**9.** *Aguiar* discusses an additional inquiry concerning the specific procedures required by constitutional due process. *See Aguiar,* 55 Haw. at 495, 522 P.2d at 1267. In the instant case, however, it is unnecessary for us to determine what procedures are constitutionally required. The requisite procedures were invoked by statute because the DOH is an "agency" as defined in HRS chapter 91 (the Hawai'i Administrative Procedures Act or HAPA). *See Sandy Beach,* 70 Haw. at 377 n. 9, 773 P.2d at 260 n. 9 (citing *Aguiar,* 55 Haw. at 495–96, 522 P.2d at 1267).

hearing required by law is not a contested case where (1) the agency has properly promulgated specific procedures for a contested case hearing, and (2) a party has failed to follow such procedures. *Simpson*, 8 Haw. App. at 24–25, 791 P.2d at 1273. Simpson applied for a mooring permit from the Department of Land & Natural Resources (DLNR). He then participated in a public hearing required by law, *see id.* at 23 n. 4, 791 P.2d at 1273 n. 4 (citing HRS § 183–41(c)(1) (Supp.1992)); however, Simpson never requested a contested case hearing. *Id.* at 18–19, 791 P.2d at 1270.[10]

Properly promulgated DLNR rules establishing formal procedures for contested case hearings were in effect at the time of Simpson's application. These rules provided for, inter alia, the exchange of exhibits, a verbatim record of the evidence presented, cross-examination of witnesses, and separate findings of facts and conclusions of law. *Id.* at 24, 791 P.2d at 1273. The rules also require a specific oral or written request for a contested case hearing. *Id.* at 19 n. 3, 791 P.2d at 1271 n. 3. The basic purpose of these rules "is to provide the Board an opportunity to establish an adequate formal record for judicial review of its decision and order." *Id.* Because Simpson did not follow the rules, the record of proceedings before the agency was "sparse and inadequate for judicial review." [11] *Id.*

In the instant case, some of the Appellees submitted "Application[s] for Contested Case[s]" on forms provided by the DOH and in full compliance with the agency's rules. *See* DOH, Rules of Practice and Procedure, Part C, "Hearings on Contested Cases" (1962).[12] The record of proceedings with respect to several of the Appellees, *see infra* subsection II.B.2.c., is neither sparse nor inadequate for purposes of judicial review. Consequently, the circuit court properly exercised jurisdiction in this case.

### c. The right to appeal—standing

 Establishing that a contested case took place does not end the inquiry into justiciability. The Appellees must also show that they are "entitled to request a review of the agency determination." *Mahuiki*, 65 Haw. at 513, 654 P.2d at 879. Notwithstanding the liberalization of rules regarding a litigant's standing to assert claims based on alleged environmental harms, the fundamental standing requirements must still be applied. Specifically, the Appellees must "demonstrate [that] *their interests were injured* and [that] they were *involved* in the administrative proceeding that culminated in the unfavorable decision." *Mahuiki*, 65 Haw. at 514–15, 654 P.2d at 879–80 (emphasis added).

First, we shall address the requirement of specially affected interests, or "injury in

**10.** Although the ICA found that the circuit court lacked jurisdiction because Simpson did not participate in a contested case, it nonetheless reversed the dismissal of Simpson's claim and "remanded with direction to remand the matter to the DLNR for a contested case hearing." *Id.* at 27, 791 P.2d at 1274. Lacking jurisdiction, the circuit court could do nothing but dismiss the appeal. Requiring a remand to the DLNR with instructions to provide a contested case hearing directly contradicts the proper finding of a lack of jurisdiction in *Simpson*. Jurisdiction is the base requirement for any court considering and resolving an appeal or original action. Appellate courts, upon determining that they lack jurisdiction—or that any other courts previously considering the case lacked jurisdiction—shall not require anything other than a dismissal of the appeal or action. Without jurisdiction, a court is not in a position to consider the case further.

**11.** An adequate record is essential because our inquiry into jurisdiction under HRS § 91–14 does not end upon a finding that the agency's rules were followed. *Mahuiki*, 65 Haw. at 514–

15, 654 P.2d at 879–80 (noting the additional requirements (1) involvement in a contested case and (2) a specially affected interest, in other words, an "injury in fact").

**12.** Part C, subsection 2(a) provides that the DOH may hold a contested case hearing "on its own motion or upon complaint or application of any interested person[.]" Subsection 2(c) of the same part provides:

A complaint ... shall contain concise statements of: (1) the legal authority under which the proceeding, hearing or action is to be held or made, (2) the disagreement, denial, grievance or such matter which is being contested by the petitioner or applicant, (3) the basic facts and issues raised, and (4) the relief to which the party, petitioner or applicant deems himself entitled. *The Department may prepare departmental forms which may be substituted for any petition or application which may be required for any authorized proceeding pursuant to law or rules.*

fact." We have stated that a member of the public has standing to enforce the rights of the public even though the individual's injury is not different in kind from the public's generally, *if that person suffers an "injury in fact." Hawai'i's Thousand Friends v. Anderson,* 70 Haw. 276, 283, 768 P.2d 1293, 1299 (1989) (citing *Akau v. Olohana Corp.,* 65 Haw. 383, 388–89, 652 P.2d 1130, 1134 (1982)) (emphasis added).

Before the circuit court, the Appellees alleged that allowing PGV's activities to proceed under the authority of the ATC permits would expose the Appellees "to potential harm including diminished property values, deterioration of air quality, odor nuisance, and possible physical injury resulting from the permitted operations." If this were an action for declaratory and injunctive relief,[13] we could simply conclude that "the pleadings ... contain a sufficient showing of individualized harm ... [so that] it cannot be said that [Appellees] sought 'to do no more than vindicate their own value preferences through the judicial process.'" *Id.* (citing *Sierra Club v. Morton,* 405 U.S. 727, 740, 92 S.Ct. 1361, 1369, 31 L.Ed.2d 636 (1972)); *see also Waianae Model Neighborhood Area Ass'n v. City & County,* 55 Haw. 40, 44, 514 P.2d 861, 864 (1973). The instant case, however, was filed as an agency appeal under which judicial review is confined to the record. *See* HRS § 91–14(f) (confining the court's review on appeal to the record); HRS § 91–14(e) (providing a procedure for supplementing the

record prior to the date set for hearing, which Appellees failed to do).

Based on our review of the record, Appellees Perry, Petricci, Phillips, and Martinovitch each clearly demonstrated an "injury in fact" as discussed in *Hawai'i's Thousand Friends:* (1) an *actual or threatened* injury, (2) traceable to the challenged action, which is (3) likely to be remedied by favorable action. *Id.*[14] *See infra* notes 15, 16 and accompanying text (discussing the current state of the record with respect to the other Appellees).

The remaining element of our analysis requires involvement or participation in a contested case. The Appellees must, therefore, "demonstrate ... [that] they were involved in the administrative proceeding that culminated in the unfavorable decision." *Mahuiki,* 65 Haw. at 514–15, 654 P.2d at 879–80; *see also Bush,* 76 Hawai'i at 134, 870 P.2d at 1278 (holding that appellants must have *participated* in a contested case).

In the Appellees' original pleadings before the circuit court, they apparently concede that only "certain" Appellees requested contested case hearings pursuant to the procedures set forth by the DOH.[15] *See supra* subsection II.B.2.b. It is not clear, however, whether any evidence in the record would support an allegation that any member of PDF suffered potential harm constituting an "injury in fact."[16]

---

13. Although the Appellees' requested relief includes declaratory and injunctive remedies, in an agency appeal, the court only has power to grant relief in accordance with HRS § 91–14(g).

14. In a sworn statement attached as an exhibit to her Application for Contested Case, Martinovitch claimed under penalty of perjury that: (1) she and her daughter live "on property adjacent to Ormat's Planned Site"; (2) activities on the Ormat site "have caused my family distress [and] discomfort"—specifically, diesel exhaust entering bedroom and kitchen windows, being wakened daily at early morning hours by the operation of bulldozers parked less than 20' from her property, helicopter noise, property destruction, and increased traffic unsuitable to the area—and (3) she fears the recurrence of physical illness suffered as a result of leaks from another geothermal project. Martinovitch repeated many of these claims, including ill health effects, in her testimony at one of the DOH public hearings.

Although they did not attach similar exhibits, several of the other Appellees also testified at the DOH public hearings. Perry and Petricci alleged that they were adjacent property owners who feared for their health. Phillips stated that he has experienced "ill effects" at his home and business (flower farm) in Leilani Estates.

15. Our review of the record reveals that Martinovitch, PDF, Petricci and Phillips each submitted an application, however, both Perry and the Kapoho Community Association apparently failed to do so.

16. PDF submitted a document to DOH that mentions an individual named Sheila Dorsey and her daughter, who suffered injuries related to geothermal projects; the document also notes that Dorsey interviewed fifteen area residents who suffered similar injuries. We could find no assertion by PDF, however, that Dorsey or any of the other injured persons is a member of PDF.

In any event, it is clear that certain Appellees " 'contested the issue of whether the permits should be granted before the agency' in a manner suggested by the Planning Commission, and thereby satisfied the requirement of 'adversary participation'." *Mahuiki,* 65 Haw. at 516, 654 P.2d at 880. The mere fact that these Appellees did not formally intervene in a contested case is not dispositive of the question whether they were involved in a contested case. *Id.* at 515, 654 P.2d at 880 (citing *Jordan v. Hamada,* 62 Haw. 444, 449, 616 P.2d 1368, 1371 (1980)).

In *Jordan,* the court stated that "[p]articipation in a hearing as an adversary without formal intervention has been held sufficient to give rise to appeal rights." *Jordan,* 62 Haw. at 449, 616 P.2d at 1371. In a footnote to this statement, the court cautioned that "one who has not participated in some phase of a contested case can [not] appeal merely because he has been 'aggrieved'." *Id.* at 449 n. 8, 616 P.2d at 1371 n. 8. Although the facts in *Jordan* are distinguishable from the instant case,[17] the four cases that the court relied upon for its ruling are on point.[18] These cases are consistent with our analysis of *Simpson* and formed an integral part of this court's legal analysis in *Mahuiki. See supra* section II.B.2.b. Of particular significance to this case is the court's reasoning in *East Diamond Head* that

> Nor could we find any relevant assertion specifically linking a PDF member to actual or threatened harm of an individualized nature.
>
> The record does not indicate that the DOH denied PDF's request for a contested case hearing because PDF did not have standing to participate in such a proceeding. The agency's response, which was also sent to those individuals who clearly had standing, merely indicated that the DOH found "no legal mandate to grant such a request[.]" Apparently, this finding was based upon advice provided by the Attorney General's office but not included in the record. Therefore, we expressly reserve comment on PDF's standing to request judicial review in this case. *See* HRS § 91–14(e).

17. Jordan was admitted as an intervenor in a contested case; he failed to comply with non-jurisdictional aspects of HRCP Rule 72 on appeal, but otherwise met the relevant jurisdictional requirements. *Jordan,* 62 Haw. at 451, 616 P.2d at 1373.

18. *See, e.g., Life of the Land v. Land Use Comm'n,* 61 Haw. 3, 10, 594 P.2d 1079, 1083 (1979)

Appellants, having comported with all board procedural dictates, could not "formally intervene" as the trial court mistakenly demanded. Manifestly, all appellants here have done everything possible to perfect an appeal.

> *That the public hearing was not a contested case [under HRS § 91–1(5)] is without merit.*

*East Diamond Head,* 52 Haw. at 524, 479 P.2d at 799 (citation omitted and emphasis added). Notwithstanding the fact that the DOH Rules of Practice and Procedure do not provide for formal intervention, Appellees Martinovitch, Petricci, and Phillips did everything possible to establish and preserve a right to appeal.

### III. *Conclusion*

Although the relevant statute and agency rules provide the DOH with discretionary authority to hold hearings on applications for ATC permits, the proceedings nonetheless constituted contested cases because they were required by constitutional due process. The circuit court, therefore, properly concluded that it was vested with appellate jurisdiction pursuant to HRS § 91–14(a).

With respect to the issue of standing, the record reveals that Appellees Martinovitch,

(finding constructive participation despite failure to testify at hearing based upon assurances that petitioner's written comments opposing the proposed action would be applied to all dockets under review); *City & County of Honolulu v. Public Utilities Comm'n,* 53 Haw. 431, 434, 495 P.2d 1180, 1182 (1972) (dismissing appeal where city failed to intervene in hearing despite Public Utilities Commission (PUC) rules providing for either formal intervention or informal participation); *In re Application of Hawaiian Electric Co.,* 56 Haw. 260, 264, 535 P.2d 1102, 1105 (1975) (considering appeal from PUC's grant of rate increase to the Hawaiian Electric Co. where appellant was merely granted informal status as a participant; holding further that "a public hearing, conducted pursuant to public notice, is a 'contested case' within the meaning of HRS § 91–14"); *East Diamond Head Ass'n v. Zoning Board,* 52 Haw. 518, 523–24, 479 P.2d 796, 798–99 (1971) (considering unincorporated landowner's association appeal of a variance granted by the Zoning Board of Appeals (ZBA), despite absence of rules for formal intervention, because ZBA Rule 4(5) requires notice and a public hearing on any variance application).

Petricci, and Phillips demonstrated sufficient participation and potential injury in fact to seek judicial review of the agency decision. Appellees Perry and the Kapoho Community Association, on the other hand, did not sufficiently participate in the contested case so they are precluded from seeking judicial review under HRS § 91–14(a). Accordingly, we affirm in part and reverse in part the court's order denying PGV's motion to dismiss, and remand for further proceedings consistent with this opinion.