85 P.3d 623

**In the Matter of the Application of ROB-ERT'S TOURS & TRANSPORTATION, INC. for Permanent Authority to Extend Motor Carrier Certificate or Permit.**

No. 22953.

Supreme Court of Hawai'i.

Feb. 19, 2004.

Sandra Y. Hoshida, and Shah J. Bento, (of Hoshida Bento & Matsunaga), Honolulu, on the briefs, for Appellant E Noa Corporation.

Arthur S.K. Fong (of Fong & Fong), Honolulu, on the briefs, for Appellee Robert's Tours & Transportation, Inc.

Shah J. Bento (of Law Office of Shah J. Bento), Honolulu, current counsel of record, for Appellant E Noa Corporation.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by DUFFY, J.

Appellant E Noa Corporation (E Noa) appeals from two orders of the Public Utilities Commission (PUC): (1) Decision and Order No. 17075, dated July 14, 1999, granting the application of Appellee Robert's Tours and Transportation, Inc. (Robert's) to extend its operating authority on Oʻahu [hereinafter, Order # 1]; and (2) Order No. 17278, dated October 12, 1999, denying E Noa's motion for reconsideration of Decision and Order No. 17075 [hereinafter, Order # 2].

On appeal, E Noa argues that: (1) the PUC addressed matters outside the application submitted by Robert's; (2) the PUC erred in failing to issue a prehearing order following the prehearing conference and in improperly adding an issue to the evidentiary hearing; and (3) the PUC erred in concluding that the services proposed by Robert's would be required by present and future public convenience. Based on the following, we affirm the PUC's orders.

## I. BACKGROUND

On December 9, 1996, Robert's filed an Application for Motor Carrier Certificate with the PUC. Robert's sought permanent authority to operate regular route service on Oʻahu between Waikīkī and Waikele, with stops at several shopping centers in between, in the over–25 passenger vehicle classification. Robert's filed the application pursuant to Hawaiʻi Revised Statutes (HRS) § 271–12 (1993),[1] which requires a motor vehicle common carrier to obtain a "certificate of public convenience and necessity" from the PUC before operating the proposed route service on a public highway in Hawaiʻi.

On December 16, 1996, E Noa filed a motion to intervene. In its motion, E Noa stated that it provided regular route service on Oʻahu in the over–25 passenger classification and was capable of meeting the need for route service between Waikīkī and Waikele.

1. HRS § 271–12, entitled "Applications for certificates of public convenience and necessity," provides in relevant part:

(a) Except as otherwise provided in this section and in section 271–16, no person shall engage in the business of a common carrier by motor vehicle on any public highway in this State, unless there is in force with respect to such carrier a certificate of public convenience and necessity issued by the public utilities commission authorizing such operation.

(b) Applications for certificates shall be made in writing to the commission, be verified under oath, and shall be in such form and contain such information, and be accompanied by proof of service upon interested parties as the commission shall, by regulation, require.

(c) Subject to section 271–15, a certificate *shall* be issued to any qualified applicant there-

for, authorizing the whole or any part of the operations covered by the application *if it is found that the applicant is fit, willing, and able properly to perform the service proposed and to conform to this chapter and the requirements, rules, and regulations of the commission thereunder, and that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity; otherwise the application shall be denied.*

(d) ... Any certificate covering the transportation of passengers shall specify the service to be rendered and the routes over which, the fixed termini, if any, between which, and the intermediate and off-route points, if any, at which the motor carrier is authorized to operate....

(Emphases added.)

The PUC granted E Noa's motion on January 17, 1997.

On January 22, 1999, the PUC held an evidentiary hearing on Robert's application. Both Robert's and E Noa conducted discovery, submitted written testimony, and filed post-hearing briefs. On July 14, 1999, the PUC issued Order # 1 granting Robert's authority to operate in the over–25 passenger classification, geographically limited to the area from Waikīkī to Waikele Center.

On July 26, 1999, E Noa filed a motion for reconsideration with the PUC. On October 12, 1999, the PUC issued Order # 2 denying E Noa's motion for reconsideration. On November 12, 1999, E Noa filed a notice of appeal.

## II.  STANDARDS OF REVIEW

### A.  Jurisdictional Matters

■ Although neither party raises a jurisdictional issue in this appeal, "[a]n appellate court has ... an independent obligation to ensure jurisdiction over each case and to dismiss the appeal *sua sponte* if a jurisdictional defect exists." *State v. Graybeard*, 93 Hawai'i 513, 516, 6 P.3d 385, 388 (App.2000) (citing *Bacon v. Karlin*, 68 Haw. 648, 650, 727 P.2d 1127, 1129 (1986)).  *See also Peterson v. Hawai'i Elec. Light Co., Inc.*, 85 Hawai'i 322, 944 P.2d 1265 (1997) (holding that this court lacked appellate jurisdiction to hear a direct appeal from a PUC order), *superseded by* HRS § 269–15.5 (Supp.1999).[2]

### B.  Review of Agency Determinations

When reviewing an appeal from an agency decision, this court typically relies upon HRS § 91–14 (1993).  *See, e.g., In re Hawaiian Elec. Co.*, 81 Hawai'i 459, 465, 918 P.2d 561, 567 (1996).  HRS § 91–14 provides in relevant part:

> (g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for fur-

ther proceedings;  or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

> (1) In violation of constitutional or statutory provisions;  or
>
> (2) In excess of the statutory authority or jurisdiction of the agency;  or
>
> (3) Made upon unlawful procedure;  or
>
> (4) Affected by other error of law;  or
>
> (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record;  or
>
> (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

"[U]nder HRS § 91–14(g), conclusions of law are reviewable under subsections (1), (2), and (4);  questions regarding procedural defects under subsection (3);  findings of fact under subsection (5);  and an agency's exercise of discretion under subsection (6)." *In re Hawaiian Elec. Co.*, 81 Hawai'i at 465, 918 P.2d at 567 (citing *Outdoor Circle v. Harold K.L. Castle Trust Estate*, 4 Haw.App. 633, 638–39, 675 P.2d 784, 789 (1983)).

■ However, HRS § 91–14 is entitled "Judicial review of *contested* cases," (emphasis added); as discussed *infra*, E Noa's appeal does not arise from a "contested" case. This court has previously declined to extend the protections of HRS § 91–14 to an appeal that did not arise from a "contested" case. *Abramson v. Board of Regents, University of Hawaii*, 56 Haw. 680, 695, 548 P.2d 253, 263 (1976) (holding that the appellant could not invoke the standards of judicial review of contested cases in HRS § 91–14 unless the appeal arose from a contested case). However, the plaintiff in *Abramson* argued that she was denied procedural due process rights

---

**2.**  *But see In re Gray Line Hawai'i Ltd.*, 93 Hawai'i 45, 995 P.2d 776 (2000) (reviewing the final order of the PUC approving applications for the transfer of motor carrier certificates pursuant to HRS § 271–18 (1993) without addressing the issue of whether the court had jurisdiction to entertain that appeal); *In re Charley's Tour &* *Transp., Inc.*, 55 Haw. 463, 522 P.2d 1272 (1974) (reviewing a final order of the PUC granting an application under HRS § 271–12 for expansion of a certificate of public convenience and necessity without addressing the issue of appellate jurisdiction, although in a case decided before HRS § 271–32(e) took effect).

guaranteed by the Hawai'i Administrative Procedure Act (HAPA); we held that the plaintiff was not entitled to HAPA's procedural due process protections. *Id.* In contrast, we see no reason why the standards of review for an agency decision should differ depending on whether the appeal arises from a contested or a noncontested case—assuming that the court has jurisdiction to hear the appeal. Therefore, we apply the standards of review articulated in HRS § 91–14 to the instant case.

## III. DISCUSSION

### A. This Court Has Jurisdiction to Consider E Noa's Appeal.

#### 1. HRS §§ 271–32(e) and –33 Govern E Noa's Appeal.

HRS Chapter 271, the Motor Carrier Law, regulates the commercial transportation of people and property. The PUC administers HRS Chapter 271; HRS Chapter 269 governs the PUC and also applies to the administration of HRS Chapter 271 where not inconsistent. HRS § 271–2 (1993).

Within HRS Chapter 271, there are two relevant statutory provisions governing appeals: HRS § 271–32(e) (1993)[3] and HRS § 271–33 (1993).[4] HRS § 271–32 allows a party to file a motion for reconsideration of a PUC decision or order; subsection (e) allows a party to appeal a PUC decision or order to the supreme court, provided that the party has already filed, and the PUC has denied, a motion for reconsideration. HRS § 271–33, on the other hand, also allows a party to appeal a PUC decision or order to the supreme court; however, HRS § 271–32(e) includes the following provision, not found in HRS § 271–33: "An appeal shall lie to the supreme court subject to chapter 602 only by a person aggrieved in the contested case hearing provided for in this section in the manner and within the time provided by chapter 602 and by the rules of court."[5]

---

3. In 1999, HRS § 271–32, entitled "Reconsideration and rehearings," provided in relevant part:

(a) After any order or decision has been made by the public utilities commission, any party to the proceeding may apply once for reconsideration or a rehearing in respect to any matter determined in the proceeding and specified in the motion for reconsideration or rehearing. The commission may grant the motion if in its judgment sufficient reason is made to appear.

. . . .

(e) *An appeal shall lie to the supreme court subject to chapter 602 from every order made by the commission which is final, or if preliminary is of the nature defined by section 91–14(a); provided such order is made after reconsideration or rehearing or is the subject of a motion for reconsideration or rehearing which the commission has denied* or with respect to which the commission has not issued a final determination within twenty days from the filing date of the motion. *An appeal shall lie to the supreme court subject to chapter 602 only by a person aggrieved in the contested case hearing provided for in this section* in the manner and within the time provided by chapter 602 and by the rules of court.

(Emphases added.) In 2000, subsection (e) was amended to delete the phrase "or with respect to which the commission has not issued a final determination within twenty days from the filing date of the motion." HRS § 271–32 (Supp. 2003).

4. HRS § 271–33 (1993) provides:

**Appeals.** From the order made on an application for reconsideration or rehearing by the public utilities commission under this chapter, an appeal shall lie to the supreme court subject to chapter 602 in the manner and within the time provided by chapter 602, and by the rules of court, provided the order is final, or if preliminary is of the nature defined by section 91–14(a). The appeal shall not of itself stay the operation of the order appealed from, but the court may stay the same after a hearing upon a motion therefor, and may impose such conditions as it may deem proper as to giving a bond and keeping the necessary accounts or otherwise to secure a restitution of the excess charges, if any, made during the pendency of the appeal in case the order appealed from should be sustained, reversed, or modified in whole or in part.

5. *See also* HRS § 269–15.5 (Supp.1999) ("An appeal from an order of the [PUC] under this chapter shall lie to the supreme court, subject to chapter 602. . . . *Only a person aggrieved in a contested case proceeding provided for in this chapter may appeal from the order,* if the order is final. . . ." (Emphasis added.)). As discussed *supra,* chapter 269 applies to the administration of chapter 271 where not inconsistent; it applies generally to the PUC, whereas chapter 271 applies more specifically to motor carrier regulation. *See* HRS Chapters 269 and 271. Section 269–15.5 appears to provide an identical procedure for supreme court review as section 271–32(e); however, if the two statutes are inconsistent, section 271–32(e) governs the appeal in the

Both HRS § 271–32(e) and HRS § 271–33 relate to appeals from PUC orders. The two statutes appear to be in conflict: while HRS § 271–33 seemingly permits appeals from all cases, HRS § 271–32(e) permits appeals "only by a person aggrieved in the contested case hearing provided for in this section in the manner and within the time provided by chapter 602 and by the rules of court." The latter provision has three possible meanings: (1) that a party may only appeal from a "contested" case hearing; (2) that a party may only appeal from hearings conducted pursuant to HRS § 271–31 (1993) (entitled "Hearings"), which primarily governs complaints filed against a motor carrier for violating any law or PUC order, see HRS § 271–31(b) to –31(d); or (3) that, in the event that the PUC conducts a contested case hearing, the only party with standing to appeal to the supreme court is the aggrieved party. Based on the following, we adopt the third interpretation and hold that this court has jurisdiction to hear E Noa's appeal.

a. *Principles of statutory construction*

In determining which statutory provision applies, we are mindful of several canons of statutory construction:

[T]he fundamental starting point is the language of the statute itself.... [W]here the language of the statute is plain and unambiguous, our only duty is to give effect to its plain and obvious meaning. When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

*Mathewson v. Aloha Airlines, Inc.*, 82 Hawai'i 57, 71, 919 P.2d 969, 983 (1996) (quoting *Housing Fin. and Dev. Corp. v. Castle*, 79 Hawai'i 64, 76–77, 898 P.2d 576, 588–89 (1995)).

"When there is doubt, doubleness of meaning, or indistinctiveness or uncertain-

ty of an expression used in a statute an ambiguity exists." *Franks v. City and County of Honolulu*, 74 Haw. 328, 335, 843 P.2d 668, 671 (1993) (citations and internal quotation signals omitted). We consider the following principles in construing ambiguous statutes:

First, legislative enactments are presumptively valid and "should be interpreted [in such a manner as] to give them effect." *State v. Spencer*, 68 Haw. 622, 624, 725 P.2d 799, 800 (1986) (citation omitted). Second, "[l]aws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another." HRS § 1–16 (1985); *Kam v. Noh*, 70 Haw. 321, 325, 770 P.2d 414, 417 (1989). Third, "where there is a 'plainly irreconcilable' conflict between a general and a specific statute concerning the same subject matter, the specific will be favored. However, where the statutes simply overlap in their application, effect will be given to both if possible, as repeal by implication is disfavored." *Mahiai v. Suwa*, 69 Haw. 349, 356–57, 742 P.2d 359, 366 (1987) (citations omitted).

*Richardson v. City and County of Honolulu*, 76 Hawai'i 46, 54–55, 868 P.2d 1193, 1201–02 (1994) (alterations in original). *See also Camara v. Agsalud*, 67 Haw. 212, 215–16, 685 P.2d 794, 797 (1984) ("[C]ourts are bound, if rational and practicable, to give effect to all parts of a statute, and ... no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all words of the statute."); *Gardens at West Maui Vacation Club v. County of Maui*, 90 Hawai'i 334, 340, 978 P.2d 772, 778 (1999) ("As a general rule, repeals by implication are disfavored.").

Finally, "[i]f the statutory language is ambiguous or doubt exists as to its meaning, courts may take legislative history into consideration in construing a statute." *Franks v. City and County of Honolulu*, 74

instant case. If sections 269–15.5 and 271–33 are inconsistent, section 271–33 controls. There-

fore, we will focus on sections 271–32(e) and 271–33 only.

Haw. at 335, 843 P.2d at 671–72 (citations, internal quotation signals, and brackets omitted).

### b. *Construction of HRS § 271–32(e)*

■ We hold that the qualifying clause in HRS § 271–32(e) neither limits appeals to "contested" cases nor limits appeals to hearings held pursuant to HRS § 271–31. Either of these interpretations would lead to an implied repeal of the first sentence of HRS § 271–33;[6] therefore, we hold that HRS § 271–32(e) is intended to apply only in the event that the PUC conducts a contested case hearing, limiting standing to the "aggrieved" party in that hearing. This reading preserves both statutes and does not render one meaningless: both HRS §§ 271–32(e) and –33 allow a party to appeal from a final PUC order, provided that the party has filed (and the PUC has denied) a motion for reconsideration of the PUC's order; the additional provision in HRS § 271–32(e) does not

limit this court's jurisdiction in *all* appeals from PUC orders, but only those appeals arising from contested cases.

The legislative history also supports this interpretation. In 1961, the Legislature passed Act 121, "The Hawai'i Motor Carrier Act." 1961 Haw. Sess. L. Act 121, § 1 at p. 108. The Act added a new chapter (the Motor Carrier Law) to the Hawai'i Revised Statutes; that chapter included one section on motions for reconsideration and rehearings[7] and a separate section on appeals.[8] 1961 Haw. Sess. L. Act 121, § 2 at 129–30. The former section eventually became HRS § 271–32 and the latter eventually became HRS § 271–33. *See* HRS §§ 270–32 to –33.

In 1973 and 1979, the Legislature amended HRS § 271–33 slightly; the statute has not changed since 1979.[9] In contrast, the Legislature made significant changes to HRS § 271–32 in 1979, including adding a new subsection (e) to govern appeals.[10]

---

**6.** The remainder of HRS § 271–33 covers the effect of an appeal on a PUC order; *e.g.*, it states that the appeal does not stay the operation of the PUC order from which a party appeals.

**7.** Section 30 of this new chapter, addressing reconsideration and rehearings on PUC orders and decisions, did not address appeals to the supreme court except to provide that "no appeal shall be taken from any order or decision of the commission before an application for reconsideration or rehearing shall have been filed with and determined by the commission." 1961 Haw. Sess. L. Act 121, § 2 at 129.

**8.** Section 31 of this new chapter provided in relevant part:

> **Appeals.** From every order made on an application for reconsideration or rehearing by the commission under the provisions of this chapter an appeal shall lie to the supreme court in like manner as an appeal lies from an order or decision of a circuit judge at chambers....

1961 Haw. Sess. L. Act 121, § 2 at 130.

**9.** In 1973, the Legislature amended HRS § 271–33 to read in relevant part:

> **Appeals.** From the order made on an application for reconsideration or rehearing by the public utilities commission under this chapter, an appeal shall lie to the supreme court in the manner and within the time provided by the rules of court for an appeal from a judgment of a circuit court, provided the order is final, or if preliminary is of the nature defined by section 91–14(a)....

**1973** Haw. Sess. L. Act 149, § 2(d) at 233. The Legislature amended this section in 1979 to provide in relevant part:

> **Appeals.** From the order made on an application for reconsideration or rehearing by the public utilities commission under this chapter, an appeal shall lie to the supreme court *subject to chapter 602 in the manner and within the time provided by chapter 602, and by the rules of court*, provided the order is final, or if preliminary is of the nature defined by section 91–14(a)....

1979 Haw. Sess. L. Act 111, § 13 at 270 (emphasis added). HRS § 271–33 has remained unchanged since 1979.

**10.** 1979 Haw. Sess. L. Act 127, § 1 at 293 amended HRS § 271–32 to read:

> (e) An appeal shall lie to the supreme court from every order made by the commission which is final, or if preliminary is of the nature defined by section 91–14(a); provided, such order is made after reconsideration or rehearing or is the subject of a motion for reconsideration which the commission has denied or with respect to which the commission has not issued a final determination within twenty days from the filing date of the motion. An appeal shall lie to the supreme court only by a person aggrieved in the contested case hearing provided for in this section in the manner and within the time provided by the rules of court for an appeal from a judgment of a circuit court.

In 1980, the Legislature amended section 271–32(e) to reference HRS Chapter 602. *See supra* note 5.

In studying the bill that would create HRS § 271–32(e), the Conference Committee stated that the purpose of the bill was to clarify the process for appealing PUC orders and decisions:

> The purpose of this bill is to establish statutory guidelines aimed at simplifying the procedure for reconsideration or rehearing of a Public Utilities Commission (PUC) decision and order in a motor carrier matter.
>
> . . . .
>
> The conditions required before an appeal can be taken noted in subsection (a) of [the bill [11]] are clarified in a new subsection (e) whereby the circumstances under which an appeal to the State Supreme Court can be taken are denoted.

Hse. Conf. Comm. Rep. No. 5, in 1979 House Journal, at 1072.

The Senate Standing Committee on Public Utilities recommended deleting subsection (e) "in its entirety[,] as the present Section 271–33, H.R. S., adequately provides for the appeals procedure." Sen. Stand. Comm. Rep. No. 891, in 1979 Senate Journal, at 1405. However, the Conference Committee rejected this recommendation, indicating that the Legislature intended that both statutes remain in effect.

### 2. E Noa need not be an "aggrieved party" because E Noa does not appeal from a "contested" case.

We need not decide whether E Noa is an "aggrieved party"; this provision of HRS § 271–32(e) does not apply to the instant case because E Noa does not appeal from a "contested case hearing."

Neither Chapter 269 nor Chapter 271 defines "contested." However, HAPA, HRS Chapter 91, governs our review of PUC decisions and provides some guidance on this issue. *See Peterson v. Hawaii Elec. Light Co., Inc.*, 85 Hawai'i 322, 327, 944 P.2d 1265, 1270 (1997) ("[J]udicial review of decisions of administrative agencies is governed by

HAPA . . . ."), *superseded on other grounds by* HRS § 269–15; *see also In re Hawaiian Elec. Co., Inc.*, 81 Hawai'i 459, 918 P.2d 561 (1996) (applying HAPA when reviewing a PUC decision).

HRS § 91–1(5) (1993) provides that "'[c]ontested case' means a proceeding in which the legal rights, duties, or privileges of specific parties are required by law to be determined after an opportunity for agency hearing." In *Bush v. Hawaiian Homes Comm'n*, 76 Hawai'i 128, 134, 870 P.2d 1272, 1278 (1994), we interpreted the contested case provision as follows: "If the statute or rule governing the activity in question does not *mandate* a hearing prior to the administrative agency's decision-making, the actions of the administrative agency are not 'required by law'. . . ." *See also Pele Defense Fund v. Puna Geothermal Venture*, 77 Hawai'i 64, 68, 881 P.2d 1210, 1214 (1994) ("According to HRS § 91–1(5), a discretionary hearing cannot be a 'contested case' because it fails to meet the 'required by law' test.").

In the instant case, the evidentiary hearing on Robert's application was not required by either statute, rule, the United States Constitution, or the Hawai'i Constitution. *See Tai v. Chang*, 58 Haw. 386, 388, 570 P.2d 563, 564 (1977) ("[T]he phrase *required by law* embraces both constitutional as well as statutory law. . . ."). We discuss each in turn.

The evidentiary hearing on Robert's application was not required by statute. HRS § 271–12, which governs applications for certificates of public convenience and necessity, does not mention—let alone require—an evidentiary hearing. Although the Legislature could have mandated a hearing before every PUC decision or order, the Legislature chose not to do so. *See, e.g.*, HRS § 271–31(d) (requiring a hearing on every complaint filed against a motor carrier).

Similarly, the evidentiary hearing was not required by agency rule. Hawai'i Administrative Rules (HAR) Chapter 6–61 (1992)

---

11. Subsection (a) of the bill provided:

After any order or decision has been made by the [PUC], any party to the proceeding may apply once for reconsideration or a rehearing in respect to any matter determined in the proceeding and specified in the motion for reconsideration or rehearing. The commission may grant the motion if in its judgment sufficient reason is made to appear.

1979 Haw. Sess. L. Act 127, § 1 at 293.

(entitled "Rules of Practice and Procedure before the Public Utilities Commission") nowhere requires the PUC to hold a hearing on an application for certificates of public convenience and necessity.

■■■■■■ The evidentiary hearing was also not constitutionally required because it was not required by the due process clause of the United States Constitution [12] or Hawai'i Constitution.[13] "The claim to a due process right to a hearing requires that the particular interest which the claimant seeks to protect be 'property' within the meaning of the due process clauses of the federal and state constitutions." *Bush*, 76 Hawai'i at 136, 870 P.2d at 1280. In the instant case, however, neither Robert's nor E Noa has a property interest implicating the due process clause. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Robert's application did not implicate any property interests: Robert's application sought an expansion of motor carrier service and E Noa intervened to prevent this expansion. Neither of these interests rises to the level of an entitlement so as to implicate the due process clause. *Cf. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (holding that a non-tenured professor at a state university did not have a property interest in continued employment); *Sandy Beach Defense Fund v. City Council of City and County of Honolulu*, 70 Haw. 361, 773 P.2d 250 (1989) (holding that an aesthetic interest did not constitute a property interest so as to implicate the due process clause).

12. The fourteenth amendment to the United States constitution provides in part, "[N]or shall any State deprive any person of life, liberty, or property, without due process of law."

13. Article I, section 5 of the Hawai'i Constitution provides in part, "No person shall be deprived of life, liberty or property without due process of law."

14. HRS § 271–12(c) provides:
   Subject to section 271–15, a certificate shall be issued to any qualified applicant therefor,

Given that the "aggrieved party" provision of HRS § 271–32(e) does not apply to the instant case, this court has jurisdiction to hear E Noa's appeal: E Noa appeals from a final order of the PUC and from the PUC's denial of E Noa's motion for reconsideration. Therefore, E Noa has satisfied the requirements of HRS § 271–32(e) and –33, such that this court has jurisdiction to hear the appeal.

B. *The PUC Did Not Address Matters Outside of Robert's Application.*

■■■■ E Noa argues that the PUC exceeded its statutory authority in granting Robert's application. E Noa notes that HRS § 271–12(c) (1993) [14] provides that the PUC shall issue a certificate of public convenience and necessity "authorizing the whole or any part of the operations covered by the application" if certain conditions are met. E Noa contends that the PUC exceeded its authority because it granted Robert's a certificate to use trolley-type vehicles when Robert's application did not include a request to use trolley-type vehicles. Specifically, the PUC stated as follows:

[W]e consider whether the interests of the public require any special limitations. Intervenor [E Noa] argues that limitations be imposed on Applicant [Robert's] to prevent it from operating trolleys over [a] regular route to Waikele Center. However, Intervenor has not supported its argument with evidence to show that vehicle restrictions are required by the public interest. As such, we conclude that no restrictions should be imposed.

■■■■ E Noa's argument is without merit. In its application, Robert's indicated that it planned to use one 31–passenger minibus to

authorizing the whole or any part of the operations covered by the application if it is found that the applicant is fit, willing, and able properly to perform the service proposed and to conform to this chapter and the requirements, rules, and regulations of the commission thereunder, and that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity; otherwise the application shall be denied.

provide this service. However, Robert's also noted that it proposed to initiate service with one vehicle but that it would add more vehicles as necessary. HRS § 271–12(d) provides in relevant part that:

> There shall, at the time of issuance, and from time to time thereafter, be attached to the exercise of the privileges granted by the certificate such reasonable terms, conditions, and limitations as the public convenience and necessity may from time to time require, including terms, conditions, and limitations as to the extensions of the service territory or route or routes of the carriers, and such terms and conditions as are necessary to carry out, with respect to the operations of the carrier, the requirements established by the commission under sections 271–9(a)(1) and 271–9(a)(4), provided that the terms, conditions, or limitations shall not restrict the right of the carrier to add to his or its equipment and facilities in the service territory or over the routes or between the termini as the development of business and the demands of the public shall require.

Thus, HRS § 271–12 authorizes the PUC to place restrictions on a certificate if the PUC determines those restrictions to be in the public interest. This includes the authority for the PUC to place limits on the type of equipment the carrier may use, if the PUC chooses to impose limits. *See* Attorney General's Opinion No. 62–37 (stating that the proviso in what is now HRS § 271–12(d) "is a prohibition against limitation on the addition of more vehicles of the authorized type, not a prohibition of the specification of the type").[15] HRS § 271–12 does not *require* the PUC to limit a carrier to a specific type of motor vehicle. Thus, E Noa is incorrect in asserting that the PUC exceeded its authority.

■ Similarly, E Noa argues that the PUC exceeded its authority because it granted Robert's a certificate to operate in a route geographically limited to an area between Waikīkī and Waikele, with an allowance "to deviate occasionally from the route described in its tariff to accommodate customer requirements for a maximum of 30 days." E Noa notes that Robert's application requested only a certificate to operate over a route between Waikīkī and Waikele with a number of fixed stops. E Noa relies upon HRS § 271–12(d), which provides in relevant part that:

> Any certificate covering the transportation of passengers shall specify the service to be rendered and the routes over which, the fixed termini, if any, between which, and the intermediate and off-route points, if any, at which the motor carrier is authorized to operate, and the certificate may include authority to transport in the same vehicle with the passengers, baggage of passengers, express, and also to transport baggage of passengers in a separate vehicle.

E Noa's argument is without merit. First, Robert's application included the information required by HRS § 271–12(d). Second, HRS § 271–12(e) (1993) expressly refutes E Noa's contention: "Any common carrier by motor vehicle transporting passengers under any such certificate may occasionally deviate from the route over which and the fixed termini between which it is authorized to operate under the certificate under such rules and regulations as the commission may prescribe." Thus, the Legislature has stated that the PUC may allow a common carrier to deviate from the proposed route, which is exactly what the PUC did in the instant case. There is simply no merit to E Noa's contention that the PUC exceeded its authority.

### C. *The PUC's Procedures Did Not Constitute Reversible Error.*

#### 1. **Prehearing order**

■ E Noa argues that the PUC violated HAR § 6–61–37 (1992)[16] by failing to enter a

---

15. "It should be noted that Attorney General's opinions are highly instructive but are not binding upon this court." *Kepo'o v. Watson*, 87 Hawai'i 91, 99 n. 9, 952 P.2d 379, 387 n. 9 (1998).

16. HAR § 6–61–37 provides:

> § 6–61–37 *Prehearing order.* (a) Where a prehearing conference is held, the commission or hearings officer shall enter a prehearing order which recites the action taken at the conference, including:
> (1) The amendments allowed to the pleadings;

prehearing order after holding a prehearing conference. The PUC issued a prehearing order on February 27, 1997 and modified that order September 30, 1997. The PUC then held a prehearing conference on January 20, 1999, prior to the evidentiary hearing held on January 22, 1999. The PUC did not issue a prehearing order subsequent to the January 20, 1999 evidentiary hearing; E Noa argues in its opening brief that it was prejudiced as a result. E Noa does not indicate in its opening brief how it was prejudiced.

E Noa's argument is without merit. HRS § 91–14(g) provides that this court "may reverse or modify [an agency's] decision and order *if the substantial rights of the petitioners may have been prejudiced* because the administrative findings, conclusions, decisions, or orders are ... [m]ade upon unlawful procedure." (Emphasis added). *See also Korean Buddhist Dae Won Sa Temple of Hawai'i v. Sullivan*, 87 Hawai'i 217, 241, 953 P.2d 1315, 1339 (1998) ("In conducting [a] review [of alleged procedural errors], this court must often employ a type of harmless error analysis to violations of HAPA. Thus, if the [agency] Director's consultation of evidence outside the record did not affect the [party's] substantial rights, his decision must be affirmed despite the technical HAPA violation."). The record does not indicate whether E Noa made any objection to the lack of a prehearing order either prior to or during the evidentiary hearing. E Noa does not indicate how it was prejudiced by the PUC's failure to issue yet another prehearing order. Therefore, we hold that E Noa's substantial rights were not so impaired as to justify overturning the PUC's orders.

**2. Evidentiary hearing**

■ E Noa also argues that the PUC violated HAR § 6–61–37 by adding an issue to the evidentiary hearing. Specifically, E Noa objects to the PUC's December 28, 1998 Notice of Evidentiary Hearing in which the

(2) The agreements made by the parties as to any of the matters considered;
(3) The issues for hearing not otherwise disposed of by admissions or agreements of the parties; and
(4) The procedural schedule.

PUC stated that, in connection with the issue of whether the PUC should set specified limitations on the certificate to promote the public interest, "the commission will consider whether Applicant's authority should be limited to non-trolley type vehicles." According to E Noa, this constitutes the introduction of a new issue in Robert's application because Robert's would otherwise have been unable to use trolleys for this service. E Noa argues that HAR § 6–61–37(b) requires the PUC to follow its prehearing order, which made no mention of trolleys; if the PUC wished to address the issue of trolleys, E Noa contends, the PUC should have amended its prehearing order rather than including the issue in the Notice of Evidentiary Hearing.

E Noa's contention is again without merit. Prehearing Order No. 15387, filed February 27, 1997 (and as amended by Prehearing Order No. 15987, filed September 30, 1997), stated that one of the issues to be addressed at the January 22, 1999 evidentiary hearing would be: "Do the interests of the public require any specific limitations to the certificate?" As discussed *supra*, the PUC has discretion to place limits on the type of equipment a motor carrier is authorized to use. By specifically mentioning trolleys in its Notice of Evidentiary Hearing, the PUC did not expand Robert's application; instead, the PUC chose a specific area of potential limitation for discussion.

D. *The PUC Did Not Err in Finding that the Proposed Service Was Required by Present and Future Public Convenience and Necessity.*

■ The PUC's determination that the service proposed by Robert's was required by present and future public convenience and necessity is reviewed for an abuse of discretion. *See* HRS § 91–14(g)(6); *In re Hawaiian Elec. Co.*, 81 Hawai'i 459, 465, 918 P.2d 561, 567 (1996).

(b) The prehearing order shall control the subsequent course of the hearing, unless modified by the commission or hearings officer at the hearing to prevent manifest injustice. The prehearing order shall supersede the pleadings where there is any conflict and shall supplement the pleadings in all other respects.

E Noa argues that this court should overturn the PUC's orders because those orders were "improperly conclusory" and that the PUC based its decision on unreliable statistics. E Noa's argument is again without merit. The PUC found that ridership statistics warranted an additional carrier between Waikīkī and Waikele and that improved transportation would "increase customers ... [and] benefit Hawai'i retailers and tourism in general." The PUC also found that the public interest would be served by granting a certificate to Robert's because it would encourage competition and constrain otherwise monopolistic operations. Therefore, we hold that the PUC acted within its statutory authority in granting the certificate to Robert's.

## IV. *CONCLUSION*

Based on the foregoing, we affirm the orders of the PUC.