NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000095
25-APR-2024
08:21 AM
Dkt. 150 SO

NO. CAAP-19-0000095

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


ECKARD BRANDES, INC., Appellant-Appellee,
v.
DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS,
Appellee-Appellee,

and

SCOTT FOYT, Intervenor-Appellant


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO.  18-1-0011)


SUMMARY DISPOSITION ORDER
(By:  Leonard, Acting Chief Judge, Nakasone and McCullen, JJ.)

Intervenor-Appellant Scott Foyt (**Foyt**) appeals from the
December 19, 2018 Order Reversing Decision of Department of Labor
and Industrial Relations (**Order Reversing DLIR Decision**) and
Final Judgment entered in favor of Appellant-Appellee Eckard
Brandes, Inc. (**EB**) against Appellee-Appellee Department of Labor
and Industrial Relations (**DLIR**), by the Circuit Court of the

First Circuit (**Circuit Court**).[1]  The Order Reversing DLIR Decision reversed a DLIR hearing officer's (**hearings officer**) December 6, 2017 "Decision and Order" (**DLIR Decision**) that upheld a May 4, 2017 notice of violation (**NOV**) issued by the DLIR to EB after Foyt complained that he was underpaid by EB on certain projects due to misclassification of the work he performed.

On appeal, Foyt contends in his sole point of error that the Circuit Court "erred in [r]eversing the Hearing Officer's Conclusion that [EB] violated Chapter 104 [Hawaii Revised Statutes (**HRS**)] under the right-wrong standard of review."

Upon review of the record on appeal and relevant legal authorities, giving due consideration to the issues raised and arguments advanced by the parties, we resolve Foyt's appeal as follows, and affirm.

Foyt worked for EB from May 5, 2011 to July 26, 2013, a time period that included the eight projects at issue in the NOV. EB cleaned, conducted CCTV inspections, and repaired pipes. Foyt's main duties while working for EB entailed driving a Vactor truck to and from the company yard to the job sites daily, where he operated equipment to clean out sewer lines.  A Vactor truck is a truck with a water tank and a high pressure hose that can push pressurized water into a sewer pipe and evacuate the material using a vacuum pump.  EB used the Vactor truck solely for the cleaning function and not for repairs.  Foyt occasionally also drove a water truck and debris truck.

---

[1]     The Honorable Keith K. Hiraoka presided over the October 5, 2018 hearing and ruled to reverse the DLIR's decision.  The Honorable James S. Kawashima entered the December 19, 2018 Order Reversing DLIR Decision and Final Judgment, and presided over the February 13, 2019 hearing on Foyt's motions to intervene and to extend time to file a notice of appeal.

HRS § 104-2(b)(2012)[2] requires that every laborer performing work on a job site for the construction of any public work project be paid no less than the prevailing wage established by the DLIR director.  Prior to July 2005, EB paid its employees under the Sewer Line Tele-Repairer wage classification.  Nelson Befitel (**Director Befitel**), then the Director of the DLIR, sent EB a letter dated July 26, 2005 (**2005 Letter**), stating that EB would not be receiving a wage survey to complete to assist in determining prevailing wages for the Sewer Line Tele-Repairer classification because that

---

[2]     HRS Chapter 104, entitled "Wages and Hours of Employees on Public Works," regulates labor practices for any entity that contracts with the government for construction of public works projects.  HRS § 104-2(a) (2012) applies the statute to the determination of wages for public works construction project contracts over $2,000.  HRS § 104-2(b) provides for the establishment of the prevailing wage for each work classification by the DLIR director, as follows:

> (b) Every laborer and mechanic performing work on the job site for the construction of any public work project shall be paid no less than prevailing wages; provided that:
>
> > (1) The prevailing wages shall be established by the director as the sum of the basic hourly rate and the cost to an employer of providing a laborer or mechanic with fringe benefits.
> >
> > . . . .
> >
> > > (B) The rates of wages which the director shall regard as prevailing in each corresponding classification of laborers and mechanics shall be the rate of wages paid to the greatest number of those employed in the State, the modal rate, in the corresponding classes of laborers or mechanics on projects that are similar to the contract work;
> >
> > (2) Except for the project prevailing wages established by subsections (h) and (i), the prevailing wages shall be not less than the wages payable under federal law to corresponding classes of laborers and mechanics employed on public works projects in the State that are prosecuted under contract or agreement with the government of the United States . . . .

(Emphases added.)

3

classification was being discontinued.  Director Befitel's 2005 Letter stated in pertinent part:

> Input from the industry brought to our attention the distinction between inspection and cleaning versus repair.  <u>The inspection and cleaning function is not considered construction work as covered under Chapter 104</u>, HRS, therefore, it will not be included in the prevailing wage rate schedule. <u>The repair work is the same work that would be classified·as Laborer I, a classification that already exists</u>.
>
> Additionally, under Section 104-2(b), HRS, the law states that "prevailing wages shall not be less than the wages payable under federal law to corresponding classes". The U.S. Department of Labor does not include a separate classification for sewer line tele-repairer work for construction projects covered by the federal Davis-Bacon Act. <u>Work of that nature is classified as Laborer I. Thus, maintaining the rate classification of Sewer Line Tele-Repairer creates a prevailing wage that is less than the wages payable under federal law to corresponding classes, and is contrary to the law</u>. ·

(Emphases added.)

After receiving the 2005 Letter, EB paid its employees, including Foyt as Laborer I or II, depending on the tools used, if they performed repair work.  If only preliminary cleaning and inspection was being done, however, EB paid its employees the company rate.  When EB bid on the jobs at issue in the NOV "in the period from 2005 up until September 2013," EB assumed that cleaning and inspection were not construction work covered by HRS Chapter 104.

On September 6, 2013, the Administrator of the DLIR Wage Standards Division, Pamela Martin (**Administrator Martin**), responded to a letter from the City and County of Honolulu to the DLIR requesting clarification on the proper wage classification for employees that were performing cleaning and inspecting work (**2013 Letter**).  Administrator Martin's 2013 Letter stated that cleaning and inspection work was now covered under Chapter 104 when cleaning and inspection is required for the repair and/or rehabilitation of sewer pipes.  The 2013 Letter stated in relevant part:

> The department's position is unchanged for strictly CCTV inspection and cleaning work only. However, under Section 12-22-1, Hawaii Administrative Rules, the definition of "construction of a public work" includes without limitation new construction, reconstruction, development, improvement, alteration, repair, renovation, painting, decorating, dredging, shoring, simultaneous sewer inspection and repair, and any other activity performed by a laborer or mechanic employed at the site of a public work.
>
> City and County repair and/or rehabilitation of sewer pipe projects which require cleaning and CCTV inspection are covered under Chapter 104, HRS. The cleaning and CCTV inspection activities are deemed an integral part of or in conjunction with a construction contract subject to Chapter 104, HRS. Workers must be classified and paid the closest existing classification as published in the Wage Rate Schedule.

(Emphasis added.) Following Administrator Martin's 2013 Letter, EB "began paying at the Laborer I rate if repair work was being performed on the job site(s), but if no repair work was being done workers were paid their regular company rate."

The hearings officer concluded that HRS Chapter 104 applied because EB's work was performed on government contracts that specified that sewer pipes were to be repaired or replaced. The hearings officer found that Foyt was paid as a Laborer I or Laborer II for the duration of the projects, but Laborer I or Laborer II was not the correct classification for Foyt's work. According to the hearings officer, because a specialized Commercial Driver's License was required to drive the truck on public roads, Foyt should have been paid as a Truck Driver Tandem Dump Truck, over 8 cu. yds. (water level); Water Truck (over 2,000 gallons) under HRS § 104-2(b). The hearings officer acknowledged the confusion caused by Director Befitel's 2005 Letter and Administrator Martin's 2013 Letter, but reasoned that the union's classification was dispositive, as follows:

> The Hearings Officer acknowledges that the letters from Nelson B. Befitel, former Director, and Pamela B. Martin, WSD Administrator, appear to have confusing or conflicting information, and the letters reflect disagreements in the prevailing practice that were being resolved under different administrations. One letter states that a worker is Laborer I who only operates the equipment on the job site, but the letter does not address or clarify the workers'

5

> classification who drives the truck and operates the equipment on the job site. However, the Fry Brothers case gives the International Operating Engineers the authority to set the prevailing area practices, and their classification is Truck Driver: Tandem Dump Truck, over 8 cu. yrds. (water level); Water Truck (over 2,000 gallons).

(Emphases added.) The hearings officer assessed EB a "penalty of $5,466.47" with regard to the misclassification violation pertinent to this appeal, and determined that Foyt was "due $45,442.47 in prevailing wages, $9,222.18 in overtime, for a total of $54,664.65."

EB appealed the hearings officer's decision to the Circuit Court on January 4, 2018, and on December 19, 2018 the Circuit Court issued the Order Reversing DLIR Decision.[3] The Circuit Court concluded that "it was arbitrary and capricious for the department to vary from the clear statements made in the director's July 26, 2005 letter upon which [EB] reasonably relied"; that Administrator Martin's 2013 Letter that differed from Director Befitel's 2005 Letter "cannot be applied retroactively"; and "since the classification used by [EB] was consistent with the statements made in [Director Befitel]'s July 26, 2005 letter, it was error for the [DLIR] Wage Standards Division to find otherwise."[4]

---

[3] The parties to the Circuit Court appeal were EB and the DLIR. Foyt did not intervene until 2019.

[4] The Circuit Court ruled as follows:

> So again, we get back to the -- I think in my mind, the dispositive issue in this case is whether or not [EB] is entitled to rely on compliance with a [sic] unambiguous letter from the Director of Labor being in compliance with the applicable law. So why is it fair for the department to come back after the fact and change the rules? And by changing the rules, I'm saying [Administrator] Martin's determination in 2013 was different than what [Director] Befitel said in 2005. And so why is [Administrator] Martin's change being given -- or why should it be given retroactive effect?
>
> . . . .

(continued...)

On secondary review of an administrative decision, we apply the same standard of review as the Circuit Court to determine whether the Circuit Court was right or wrong in its decision under HRS § 91-14(g) (2012 & Supp. 2019), which provides:

> (g) Upon review of the record, the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> . . . .
>
> (4) Affected by other error of law; [or]
>
> . . . .
>
> (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

---

[4](...continued)
> On the merits, first of all, I would like to make clear what the court is not ruling on because the court is going to reverse the Decision and Order.  But the court is not ruling that, in the future, work performed by a Vactor truck driver who does not also do repair work is or is not compensable under the operating engineers contract or any other classification.  The basis for the court's decision is that it was arbitrary and capricious for the department to vary from the clear statements made in [Director Befitel]'s July 26, 2005 letter upon which [EB] reasonably relied in calculating its expenses to submit its bids on these state contracts.  So basically, the State cannot change the rules after a clear statement like this without notice being given to the employer, such as it arguably was in 2013 in the meeting with [Administrator] Martin.  So the court is not ruling that that was a correct decision by [Administrator] Martin.  The court is just ruling that it cannot be applied retroactively.
>
> So it was a misapplication of the law for the Wage Standards Division not to apply the directives contained in [Director Befitel]'s July 26, 2005 letter.  So because the parties did not controvert and the complainant agreed that he was paid for the correct number of hours, the only thing he was contesting was the classification.  And since the classification used by [EB] was consistent with the statements made in [Director Befitel]'s July 26, 2005 letter, it was error for the Wage Standards Division to find otherwise.

(Emphases added.)

7

Paul's Elec. Serv., Inc. v. Befitel, 104 Hawaiʻi 412, 416, 91 P.3d 494, 498 (2004). Under HRS § 91-14(g), conclusions of law are reviewable under subsection (4), and an agency's exercise of discretion is reviewable under subsection (6). Id.

On appeal, Foyt raises a number of arguments challenging the Circuit Court's reversal of the DLIR Decision that were not raised before the Circuit Court by Foyt, which we do not address.[5] We address Foyt's argument that the agency's interpretation of HRS "Section 104" "is entitled to deference" under Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837 (1984) (**Chevron**); "the current Administration's interpretation of Section 104 HRS controlled in Foyt's matter and not a prior Administration's letter"; and allowing EB "to rely upon an outdated 2005 . . . letter from a prior administration is not based on reasonable reliance . . . ."

EB responds that "Director Befitel had the authority to make statements in the 2005 letter because he was eliminating a

---

[5]     For Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(b)(4)(iii) compliance, Foyt cites to numerous transcript pages in the point of error and appends these pages to the Opening Brief. Our review of the attached transcript pages reflects that the only wage misclassification argument Foyt raised below was as follows:

> So this is kind of like one fluke administration gives the employer this letter in 2005 saying you don't have to pay this particular wage, but the administrations before and after all say you do. And that's why we're saying under Chevron versus USA [sic] we should be able to present that argument to the Intermediate Court of Appeals that [EB] had no right under Chevron versus USA to rely on that one administration telling them that they don't have to pay the prevailing wage under 104 to clients like mine . . . .

The above Chevron argument regarding the 2005 Letter was made by Foyt's counsel at the February 13, 2019 hearing on Foyt's motion to intervene and motion to extend time to file a notice of appeal. Foyt does not identify where or whether he or another party, such as DLIR, raised the additional legal arguments he raises on appeal to the Circuit Court below, and they are waived. See HRAP Rule 28(b)(4); Cnty. of Hawaiʻi v. UNIDEV, LLC, 129 Hawaiʻi 378, 387, 301 P.3d 588, 597 (2013) ("It is axiomatic that where a party fails to raise an argument before the courts below, that argument may be deemed waived for purposes of appeal." (citation omitted)); Haw. Ventures, LLC v. Otaka, Inc., 114 Hawaiʻi 438, 500, 164 P.3d 696, 758 (2007) ("It is unfair to the circuit court to reverse on a ground that no one even suggested might be error." (brackets omitted) (quoting Querubin v. Thronas, 107 Hawaiʻi 48, 61 n.5, 109 P.3d 689, 702 n.5 (2005))).

wage rate classification from the wage rate schedule[,]" and he "was authorized by the statute and administrative rule to do so." EB claims that it "relied on that letter in bidding on all of the projects worked on by Foyt," and in "pay[ing] its employees in accordance with it." EB argues that the 2005 Letter was not outdated, and that Administrator Martin's 2013 Letter was not "entitled to greater weight" because she "ha[d] no authority under the regulations to modify the wage rate schedules."

Foyt's reliance on <u>Chevron</u> is misplaced. The principle of deference to an agency's interpretation of its governing statutes under <u>Chevron</u> applies where "the statute is silent or ambiguous with respect to the specific issue . . . ." 467 U.S. at 843; <u>see</u> <u>Haole v. State</u>, 111 Hawaiʻi 144, 155, 140 P.3d 377, 388 (2006) (citing <u>Orca Bay Seafoods v. Northwest Truck Sales, Inc.</u>, 32 F.3d 433, 436-37 (9th Cir. 1994)). <u>Chevron</u> does not address a change in an agency's construction of a statute, which is the situation here.

"[I]n order to invoke estoppel against the government, 'one must show that he or she has detrimentally relied on the representation or conduct of the person sought to be estopped *and* that such reliance was reasonable.'" <u>Turner v. Chandler</u>, 87 Hawaiʻi 330, 334, 955 P.2d 1062, 1066 (App. 1998) (citing <u>Simpson v. Dep't Land & Nat. Res.</u>, 8 Haw. App. 16, 25, 791 P.2d 1267, 1273 (1990)). "[E]stoppel cannot be applied to actions for which the agency or agent of the government has no authority." <u>Id.</u> (quoting <u>Filipo v. Chang</u>, 62 Haw. 626, 634, 618 P.2d 295, 300 (1980)). In <u>Turner</u>, the Department of Human Services was estopped from recouping the value of the food stamp overpayment because "DHS had no authority to confer food stamp benefits on [a]ppellant during this period," and thus, "the contrary representation made to [a]ppellant by a DHS counselor was unauthorized and ultra vires." <u>Id.</u>

Here, the statements made in the 2005 Letter to EB were within Director Befitel's statutory authority to determine prevailing wages. <u>See</u> HRS § 104-2(b)(1) (providing that "[t]he

9

prevailing wages shall be established by the director . . . ."); HRS § 104-1 (2012) (defining "director" as the "director of labor and industrial relations of the State"). The classification that EB applied to compensate Foyt was consistent with the Director's statements in the 2005 Letter, which instructed EB to compensate for work previously covered by the Sewer Line Tele-Repairer classification under the Laborer classification. EB reasonably relied on the 2005 Letter in making the calculations for its bid, which occurred before the conflicting statements in Administrator Martin's 2013 Letter. See Turner, 87 Hawaiʻi at 334, 955 P.2d at 1066. The subsequent 2017 NOV that EB received established EB's detrimental reliance on the 2005 Letter. See id. The Circuit Court did not err in its conclusions that EB's reliance on the 2005 Letter was reasonable under these circumstances; and that DLIR "retroactively" changing its position without notifying EB that it was not entitled to rely on Director Befitel's 2005 Letter was "arbitrary and capricious." See Paul's Elec. Serv., Inc., 104 Hawaiʻi at 416, 91 P.3d at 498; HRS § 91-14(g)(4) and (6).

For the foregoing reasons, we affirm the December 19, 2018 Order Reversing Decision of Department of Labor and Industrial Relations and Final Judgment, filed and entered by the Circuit Court of the First Circuit.

DATED: Honolulu, Hawaiʻi, April 25, 2024.

On the briefs:

Shawn A. Luiz,
for Intervenor-Appellant.

Richard M. Rand,
for Appellant-Appellee.

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Karen T. Nakasone
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge